*227 OPINION OF THE COURT
Titone, J.
The issue in this appeal is whether the owner of an occupied urban building who has not kept the building’s security system in good repair may be held liable in tort solely because the building was used to complete a crime that began on a public street. Under the circumstances of this case, where neither the victim nor the crime were connected with the defendant’s building, we hold that plaintiff was not within the zone of foreseeable harm and that, as a consequence, liability cannot be imposed.
The complaint in this case was dismissed by Special Term on defendant Housing Authority’s summary judgment motion after affidavits were submitted and a hearing in which plaintiff gave sworn testimony was held. The alleged facts, briefly stated, are that at about 6:45 a.m. on July 25, 1982, 16-year-old Simone Waters was walking on a public street, just outside a public housing project, whén she was accosted by a man who displayed a knife and demanded that she walk with him to a building around the corner. Once inside the building, which was unlocked, the man forced her to the roof and, after taking her money, sodomized her. According to her bill of particulars, plaintiff suffered emotional trauma, as well as minor physical injuries, as a result of the incident.
An investigator’s affidavit submitted by plaintiff further alleged that the front door locks on the building, which was owned by defendant, had been either broken or missing for at least two years before the incident and that several tenants had registered complaints about the condition over that two-year period. According to the affidavit, the investigator’s inquiries also disclosed that there had been at least five criminal incidents in the building involving outsiders. Finally, the investigator stated, based on his experience, that "had the door locks on this building been in proper working order, this sexual attack would in all probability have not occurred.” This statement was supported by the additional allegation that because of the nature of the crime and the psychology of this type of criminal, crimes such as this one "almost invariably occur in secluded areas.”
Relying on Palsgraf v Long Is. R. R. Co. (248 NY 339), Special Term held that "it requires too much stretching of the imagination to hold defendant responsible” for plaintiff’s injuries and, as a consequence, the court granted defendant’s *228 motion for summary judgment. The Appellate Division affirmed, with two Justices dissenting. On plaintiffs appeal from the Appellate Division order, we now affirm.
It is clear that when a governmental entity such as defendant acts in a proprietary capacity as a landlord, it may be held liable in tort to the same extent as is a private landlord (Miller v State of New York, 62 NY2d 506, 511). It is also now beyond dispute that a landlord, private or public, may have a duty to take reasonable precautionary measures to secure the premises if it has notice of a likelihood of criminal intrusions posing a threat to safety (see, Miller v State of New York, supra; Nallan v Helmsley-Spear, Inc., 50 NY2d 507). Finally, we have held that a building owner who breaches such a duty may be held liable to an individual who is injured in a reasonably foreseeable criminal encounter that was proximately caused by the absence of adequate security (Miller v State of New York, supra; Nallan v Helmsley-Spear, Inc., supra).
These basic principles, however, do not resolve the unusual problem presented here. Although plaintiff has made the necessary allegations of negligent security maintenance, notice of prior criminal intrusion and proximately caused injury,* her case differs significantly from those in which the landowner’s liability for inadequate security has previously been upheld. Unlike the tenant in Miller v State of New York (supra) and the business guest in Nallan v Helmsley-Spear, Inc. (supra), plaintiff had no connection whatsoever to the building in which her injuries ultimately occurred. Accordingly, we must look beyond Nallan and Miller to determine whether defendant landlord’s duty should be extended to a person in plaintiff’s position.
It is often said that "[pjroof of negligence in the air * * * will not do” (Pollock, Torts, at 472 [10th ed]; Martin v Herzog, 228 NY 164, 170). What this maxim suggests, simply put, is that the concept of a duty of care, which is essential to the law of negligence, has meaning only when it is considered in relation to both the harm that the duty exists to prevent and *229 the class of individuals to whom it is owed. "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension” that delimits the duty’s scope (Palsgraf v Long Is. R. R. Co., supra, p 344).
The question of the scope of an alleged tort-feasor’s duty is, in the first instance, a legal issue for the court to resolve. In this analysis, "not only logic and science, but policy play an important role” (De Angelis v Lutheran Med. Center, 58 NY2d 1053, 1055). The common law of torts is, at its foundation, a means of apportioning risks and allocating the burden of loss. While moral and logical judgments are significant components of the analysis, we are also bound to consider the larger social consequences of our decisions and to tailor our notion of duty so that "the legal consequences of wrongs [are limited] to a controllable degree” (Tobin v Grossman, 24 NY2d 609, 619; see, Pulka v Edelman, 40 NY2d 781; Ultramares Corp. v Touche, 255 NY 170).
With these principles in mind, we turn now to the question whether this plaintiff was within the orbit of duty imposed on the owner of the building in which her injuries occurred. Initially, we note that the duty that was allegedly breached— to maintain the front door locks in working condition — exists principally to protect the safety and possessions of the tenants and visitors inside the premises (see, Miller v State of New York, supra). The risk to be reasonably apprehended in this instance is that of intrusion by outsiders with criminal motive who might do harm to those who have a right to feel at least minimally secure inside a dwelling place. Although it is argued that the duty to keep occupied residential premises secure also encompasses the risk that an unsecured building might become a safe haven for crime begun on the street, we cannot agree that the scope of a landowner’s duty should be extended to embrace members of the public at large, with no connection to the premises, who might be victimized by street predators.
In this regard, our decisions in Strauss v Belle Realty Co. (65 NY2d 399) and Pulka v Edelman (supra) are instructive. In Pulka we noted, in a slightly different context, that two important factors in determining the scope of a duty are " 'the relationship between the defendant and the [third] person who threatens the harm’ ” on the one hand, and the " 'relationship between the defendant and the person exposed *230 to harm’ ” on the other (40 NY2d, p 783). We stressed the latter factor in Strauss, noting that while the absence of a relationship of privity between the defendant and the injured party is not by any means dispositive, "[considerations of privity are not entirely irrelevant”, particularly when public policy is involved (65 NY2d, pp 402-403). Our concern in Strauss was with the need to place "controllable limits” on liability (id., p 405). A similar concern is operative here.
Although strict notions of privity are not dispositive in defining the scope of a landowner’s duty (see, Basso v Miller, 40 NY2d 233), in this case both logic and public policy weigh heavily in favor of confining the scope of defendant landowner’s duty to protect against criminal acts to tenants and others who might reasonably be expected to be on the premises. An important consideration in this context is the fact that the landowner has no control over either the acts of the primary wrongdoer or the conditions on the public byways that make such acts all too commonplace (see, 2 Speiser, Krause & Gans, American Law of Torts § 9:19, at 1084-1085 [1985]; cf. Pulka v Edelman, supra, p 784). Another significant factor is the virtually limitless liability to which defendant and other landowners would be exposed if their legal obligations were extended to plaintiff and to all others in her position (see, Strauss v Belle Realty Co., supra).
Finally, we note that the important public goals of minimizing crime and encouraging the maintenance of urban property would not materially be advanced by expanding the scope of landowners’ duties in the manner plaintiff suggests. The possibility of tort liability arising from injury to tenants or others on the premises provides a strong incentive to landlords to keep locks and other security systems in good repair. Moreover, it is unlikely that the incidence of street crime would be meaningfully affected, since the urban environment includes many nooks and crannies, other than unsecured dwellings, which afford malefactors the privacy they need to commit their misdeeds. Thus, the social benefits to be gained do not warrant the extension of the landowner’s duty to maintain secure premises to the millions of individuals who use the sidewalks of New York City each day and are thereby exposed to the dangers of street crime.
Because defendant landowner had no relationship at all to the as-yet-unidentified wrongdoer whose presence on the street posed a threat to plaintiff’s safety (cf. Pulka v Edelman, supra, *231 ,p 784) and because this injured plaintiff had no association with the premises independent of the crime itself, the landowner’s duty to maintain the security of the building may not be deemed to extend to her. This conclusion alone is fatal to her claim, regardless of whether the ultimate harm could be found to be reasonably foreseeable (Pulka v Edelman, supra, p 785). Accordingly, the complaint was properly dismissed and the order appealed from should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

Plaintiff’s claim is based on the premise that the assailant’s apparent foreknowledge of the building’s existence was a substantial cause of his decision to commit this crime. Our conclusion that plaintiff was not within the zone of harm contemplated by the landowner’s duty to keep the premises secure makes it unnecessary for us to decide whether this theory would be a legally sufficient basis for a finding of proximate cause (cf. Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 520-521).