A. Richard Benedek, Respondent, v Albert Heit, Appellant.

First Department, August 11, 1988

## APPEARANCES OF COUNSEL

*Michael C. Silberberg* of counsel *(Kathy S. Marks* with him on the brief; *Golenbock and Barell,* attorneys), for respondent.

*Gary M. Carlton* of counsel *(Goldberg & Carlton,* attorneys), for appellant.

## OPINION OF THE COURT

Kupferman, J. P.

The defendant is an attorney. His client was one Robert

Dudley and, through Dudley, USTV Network, Inc. The latter corporation was organized to purchase television station WDAU-TV in Scranton, Pennsylvania.

The plaintiff was to be an investor and involved in the operation of the television station. He had his own counsel, although the negotiations for the purchase of the television station were in the hands of the defendant. The plaintiff made it clear to the defendant that he wanted no personal liability.

The original agreement called for a down payment in the form of an irrevocable letter of credit for $600,000 to be tendered upon the signing of the contract, with the remainder of the $12,000,000 purchase price to be paid at the closing. The closing was subject, among other things, to the consent of the Federal Communications Commission to the transfer.

Because the purchaser could not come up with the $600,000 letter of credit, it arranged for three letters of credit to be issued, each in the amount of $200,000, of which the plaintiff gave one.

The closing never took place, apparently because of the inability to raise the requisite purchase money.

The sellers then sued plaintiff, individually, for breach of contract in Federal court in Pennsylvania.

The basis for attempting to hold the plaintiff individually liable was the fact that the purchase contract referred to USTV Network, Inc. "and its Associates (collectively the 'Buyer')" plus the facts that he gave a letter of credit and was involved, among other things, in asking for a modification of the terms of the purchase, although he was not a signatory to any such agreement.

One cannot deprecate plaintiff's attempt to limit his liability by settling the Federal suit, which he did for $325,000 *(cf., Texaco, Inc. v Pennzoil Co.,* 626 F Supp 250, *revd in part and affd in part* 784 F2d 1133, *revd* 481 US 1, 95 L Ed 2d 1; *Texaco, Inc. v Pennzoil Co.,* 729 SW2d 768 [Tex]). This lawsuit is for that amount plus legal fees and resulted, after a jury verdict, in a judgment against defendant in the amount of $603,785.

The real issues in this legal malpractice action were whether the defendant was the plaintiff's attorney and whether the defendant was negligent in using the words "Associates" in the agreement. Those questions were resolved by the jury in favor of the plaintiff.

There is, we believe, the further issue of proximate or legal or superseding cause, which was not specially presented to the

jury and which arises from the fact that because the money could not be raised for the purchase of the station, a conscious choice was made by the purchasers, of which the plaintiff was a part, not to complete the transaction. This question was for the finder of fact under proper instructions. *(Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 314-315.)

While the plaintiff made it clear to defendant that he did not want to be exposed to any personal liability, at no time was the defendant retained as his attorney and there was no billing of the plaintiff by the defendant for any legal services. The word "Associates", which was a major factor in the seller's successful attempt to hold the plaintiff personally liable as a party to the purchase, was included at the request of Dudley, who intended to have other investors involved and who also wanted the arrangement to look more like a substantial business deal rather than a thinly capitalized attempt by a few individuals to acquire a television station. Among other things, SWB Corporation was incorporated in Pennsylvania to take title to the station. As defendant points out, that could have been one of the "Associates". Likewise, there was another party named Woods, who gave a letter of credit for $200,000 as did Dudley and the plaintiff. He, too, could have been one of the "Associates". Thus, defendant cannot be faulted for the inclusion of such a generalized term in the agreement. Moreover, a draft of an earlier agreement, which referred to the purchasers as partners and included the plaintiff's name, was changed at his request.

The plaintiff had his own counsel, and the defendant cannot be considered to have had any obligation to the plaintiff other than one of fair dealing with an investor. Representing a business associate does not "mean the involuntary assumption of a series of new relations". *(Moch Co. v Rensselaer Water Co.,* 247 NY 160, 168 [Cardozo, Ch. J.].) Nothing was done deliberately to harm the plaintiff, and it was his own refusal to go ahead with the TV station deal which led to the lawsuit, which plaintiff prudently settled. It is because of this breach that the Federal suit was brought and that is the "loss causation" *(cf., Wilson v Ruffa & Hanover,* 844 F2d 81). "[T]he concept of a duty of care, which is essential to the law of negligence, has meaning only when it is considered in relation to both the harm that the duty exists to prevent and the class of individuals to whom it is owed. 'The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of

apprehension' that delimits the duty's scope *(Palsgraf v Long Is. R. R. Co.,* [248 NY 339,] 344)." *(Waters v New York City Hous. Auth.,* 69 NY2d 225, 228-229.)

Were we not reversing and dismissing the complaint, we would order a new trial on the ground that the court's charge does not sufficiently address the issue of proximate or legal or superseding cause. However, it is apparent that there is no proof here to support a verdict for the plaintiff. *(See, Cohen v Hallmark Cards,* 45 NY2d 493, 498-499; *see also,* 7 Weinstein-Korn-Miller, NY Civ Prac ¶ 5522.03.)

Accordingly, the judgment of the Supreme Court, New York County, entered October 23, 1987, after a jury trial before Martin B. Stecher, J., in favor of plaintiff in the sum of $603,785, should be reversed, on the law, and the complaint dismissed, without costs.

CARRO, ROSENBERGER and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, entered on October 23, 1987, unanimously reversed, on the law, and the complaint dismissed, without disbursements.