MIGUEL A. MUNIZ, an Infant, by His Mother and Natural Guardian, DAISY GONZALES, et al., Appellants, v FLOHERN, INC., Defendant, and LEFRAN REALTY CORP. et al., Respondents.

First Department, March 22, 1990

### APPEARANCES OF COUNSEL

*Paul D. Montclare* of counsel *(Montclare & Guay,* attorneys), for respondents.

*David H. Fromm (Aaron J. Broder, P. C. [Polatsek & Fromm* of counsel], attorneys), for appellants.

### OPINION OF THE COURT

ROSENBERGER, J.

This appeal places before us the question of whether a landlord may be held liable for the injury to a pedestrian outside of his building caused by a bullet shot from inside the premises during a robbery of the allegedly known, illegal "drug supermarket" operated therein. The plaintiffs are a nine-year-old boy who was permanently blinded when he was shot in the head while passing in front of defendants-respondents' building, and his mother. Upon review of the record herein, we conclude that respondents were not entitled to summary judgment as a matter of law, and that Supreme Court erred in dismissing the complaint.

Respondents' motion for summary judgment was supported only by an affirmation of counsel, wherein it was asserted that the infant plaintiff had been injured during the course of an

attempted robbery by one Gregory Gardner who was indicted and pleaded guilty to the charges. Despite the fact that counsel identified the indictment number and the date of the guilty plea, no court records or copy of the indictment were submitted in support of the motion. Plaintiffs-appellants, in opposition to the motion, alleged that the store was a notorious drug location which had been raided by the police on five occasions prior to the shooting on January 13, 1980, in which the infant plaintiff was blinded.

Two handwritten statements taken from the superintendent of the building by appellants' investigator in July 1980 contain allegations that the patrons of the store did not go there to buy clothing but to buy drugs, and that the superintendent had "reported the misuse of the store to the landlords" several times prior to the shooting. Appellants also submitted an affidavit from Felix Santana, executive director of the West 134th Street Block Association since 1968, who had received many complaints from people in the neighborhood about the store on respondents' premises. According to Mr. Santana, it was well known in the community "about drugs and narcotics being sold in that store." He also attested to the fact that prior to 1980, the store had been raided by the police on various occasions but "no sooner had the raid occurred and the store closed, when it was re-opened with the sale of drugs and narcotics as usual."

Despite this evidence, which was sufficient to raise a triable issue of fact, Supreme Court accepted respondents' denial of all knowledge of drug sales from the store on their premises. Supreme Court concluded that even if the landlord had knowledge of the drug operation it "stretches foreseeability much too far" to conclude the landlord should have foreseen an attempted robbery of the drug operation. We disagree.

While the intervening criminal act of a third person will generally be deemed a superseding cause which severs the liability of the original tort-feasor, this is not the case "when the intentional or criminal intervention of a third party or parties is reasonably foreseeable" (*Kush v City of Buffalo*, 59 NY2d 26, 33 [1983]). Thus, a landlord may be held liable for the personal injury inflicted upon a tenant or guest by a criminal intruder in a common area of the building if the landlord should have anticipated a risk of harm from criminal activity to persons on the premises (*Miller v State of New York*, 62 NY2d 506 [1984]; *Nallan v Helmsley-Spear, Inc.*, 50

NY2d 507, 519-520 [1980]; *Sherman v Concourse Realty Corp.,* 47 AD2d 134 [2d Dept 1975]).

In this case, however, neither the injured infant nor his mother had any relationship with respondents; they were merely passersby. Consequently, respondents argue, appellants were not within "the orbit of duty imposed on the owner of the building" and, as the Court of Appeals held in *Waters v New York City Hous. Auth.* (69 NY2d 225 [1987]) a landlord has no duty to "the public at large, with no connection to the premises, who might be victimized by street predators" *(supra,* at 229).

In *Waters (supra),* the plaintiff was accosted on the street by a man with a knife who forced her to walk around the corner and into an unlocked building where she was robbed and sodomized. The Court of Appeals affirmed the summary judgment in favor of the defendant landlord on the ground that neither the plaintiff nor her assailant had any relationship to the defendant. Although the court noted that "strict notions of privity are not dispositive in defining the scope of a landlord's duty", the court found that no important public policy would be advanced by extending the scope of a landlord's duty to maintain secure premises for the benefit of the public-at-large. *(Supra,* at 230.)

Appellants contend that *Waters (supra)* is distinguishable because in this case it is alleged that the crime which led to the infant's injury was directly related to the illegal drug operation which was openly and notoriously conducted on respondents' premises. Respondents' building was not merely a fortuitous site randomly chosen by a malefactor, but was itself the scene of an unlawful activity which is known to attract violent crime. This case is also distinguishable from *Santiago v New York City Hous. Auth.* (63 NY2d 761), on which the dissent relies. While a shooting incident may not be a reasonably foreseeable consequence of the failure to repair a door, it is an all too foreseeable consequence of the drug trade which respondents allegedly tolerated on their premises. On this point, we must agree with appellants.

The dissent contends that respondent landlord owed no duty to appellants. The common law of long standing, however, is to the contrary. "It is the duty of the owner of a building, abutting upon a public street, to maintain it in such a condition that it shall not become dangerous to the traveling public" *(Appel v Muller,* 262 NY 278, 280 [1933]). In *Appel v*

*Muller,* the Court of Appeals held that a landlord does have a duty to protect pedestrians on the public street from dangerous conditions emanating from his premises (in that case, from falling glass out of a broken window), and "nothing less than 'alienation of the entire property, either permanently, as by deed, or temporarily, as by lease' " can absolve him of that duty *(supra,* 262 NY, at 280, citing *Trustees of Vil. of Canandaigua v Foster,* 156 NY 354, 362 [per Vann, J.]). While the court recognized that a leasehold which vests the tenant with exclusive possession will relieve the landlord of liability to a passerby due to a dangerous condition arising during the tenant's occupancy, if the landlord "has covenanted with the tenant to make repairs, he is liable to the passer-by for the injuries inflicted" *(supra,* 262 NY, at 281). The landlord's "original duty to the public to maintain the structure in safe condition, and his retention of the power to perform the duty", the court held, "combine to make him liable" *(supra,* at 282; *Worth Distribs. v Latham,* 59 NY2d 231, 238 [1983]; *McCabe v Century Theatres,* 25 AD2d 154, 157, n 2 [2d Dept 1966], *affd* 18 NY2d 648).

We need not look to the terms of the lease to determine whether the landlord retained the power to remedy a dangerous condition arising from unlawful activity on his premises. Under Real Property Law § 231 an owner of real property who knowingly allows that property to be used or occupied for any unlawful trade, manufacture or business "is liable severally, and also jointly with one or more of the tenants or occupants thereof, for any damage resulting from such unlawful use" (subd [2]). This statute expresses the clear public policy of the State which requires that owners of real property be vigilant in preventing their property from being used for unlawful purposes. To this end, subdivision (1) of section 231 provides that whenever a lessee or occupant uses any part of a building for an unlawful trade or business, the lease "shall thereupon become void, and the landlord of such lessee or occupant may enter upon the premises so let or occupied."

It is to be noted that the owner of these premises was not reluctant to enlist the aid of the courts when the tenant of the subject premises was late in rent payments, having twice commenced summary judgment proceedings for nonpayment. The common law also imposes a duty upon landlords to control the conduct of persons on their premises when they are reasonably aware of the necessity to do so *(Mangione v Dimino,* 39 AD2d 128, 130 [4th Dept 1972]), and this duty

extends to the protection of persons lawfully present in public places adjacent to the landlords' premises *(De Rosa v Fordham Univ.,* 18 AD2d 1056 [1st Dept 1963]).

These compelling reasons of public policy lead us to conclude that the intervening criminal act of another is not a superseding cause which will relieve a landlord, who knows or has reason to know of illegal activities on his premises, of liability for injuries to innocent persons not in privity with the landlord where the intervening criminal act is a reasonably foreseeable sequela of such illegal use. The shot which blinded the infant plaintiff was fired from inside the store during a robbery of this illegal "drug supermarket". Public policy is furthered by requiring that property owners not permit illegal enterprises which attract violent confrontations to flourish on their premises.

Appellants' allegations regarding the shooting in which the infant was injured and the illegal drug operation on respondents' premises, which was known in the community and which had been the target of several police raids, are legally sufficient to state a cause of action against respondents.

Accordingly, the order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered July 11, 1988, which granted respondents' motion for summary judgment and dismissed the complaint against them should be reversed, on the law, and the complaint reinstated, without costs.

SULLIVAN, J. P. (dissenting). Plaintiffs, an infant and his mother, who sues both in her representative capacity and derivatively, seek to recover damages for personal injuries suffered by the infant, a pedestrian on a public sidewalk in front of the premises owned by defendants Lefran Realty Corp., Calvin Polivy and Bernice Polivy, as a result of a gunshot would inflicted by a criminal assailant, who apparently fired the shot from a rented streetfront store in defendants' premises.

On this appeal from the grant of summary judgment in favor of these defendants dismissing the complaint, plaintiffs argue that they made out a prima facie showing of negligence because defendants knew or should have known that the tenant was operating an illegal drug business in the store; that defendants failed to take any action to evict the tenant on the basis of such activity; and that defendants' alleged failure to take such action was the proximate cause of the infant plaintiff's injuries.

Even assuming the validity of these factual allegations, which are vigorously disputed, plaintiffs fail to state a claim in negligence because, under the circumstances of this case, defendants did not owe them any duty. In addition, the shooting by a criminal assailant was an intervening act, which, as a matter of law, serves to break any causal connection between defendants' alleged negligence and the infant plaintiff's injuries. Thus, I would affirm the order granting defendants' motion for summary judgment.

It is axiomatic that, absent a duty of care owed by the defendant to the plaintiff, there can be no recovery on a theory of negligence. *(Pulka v Edelman,* 40 NY2d 781, 782.) It is for the courts, in the first instance, to determine as a threshold matter whether the alleged tort-feasor owes a duty of care to the injured party. *(Waters v New York City Hous. Auth.,* 69 NY2d 225, 229.) "It is often said that '[p]roof of negligence in the air * * * will not do' * * *. What this maxim suggests, simply put, is that the concept of a duty of care, which is essential to the law of negligence, has meaning only when it is considered in relation to both the harm that the duty exists to prevent and the class of individuals to whom it is owed. * * * The question of the scope of an alleged tort-feasor's duty is, in the first instance, a legal issue for the court to resolve." *(Supra,* at 228-229.)

The Court of Appeals has long recognized, as a policy matter, that courts have a responsibility " 'to limit the legal consequences of wrongs to a controllable degree' " *(Strauss v Belle Realty Co.,* 65 NY2d 399, 402; *see also, Waters v New York City Hous. Auth., supra,* 69 NY2d, at 229), and thus to avoid the facile and expedient in molding the concept of duty to any particular case. In determining whether a duty exists, the Court of Appeals has consistently looked to the relationship, if any, between the defendant and the person who caused the harm or between the defendant and the injured party. In *Pulka v Edelman (supra),* for instance, the court set out the following guidelines for the imposition of a legal duty on one party to control the conduct of another: "(1) '[t]he relationship between the defendant and the person who threatens the harm to the third person may be such as to require the defendant to attempt to control the other's conduct' or (2) 'there may be a relationship between the defendant and the persons exposed to harm which requires the defendant to afford protection from certain dangers including

the conduct of others' ". (40 NY2d, at 783; *see also, Waters v New York City Hous. Auth., supra,* 69 NY2d, at 229-230.)

In *Waters (supra),* the plaintiff, a passerby, was accosted on the sidewalk outside of one of the defendant's housing projects and thereafter, at knifepoint, taken through an unlocked door into one of the buildings and forced to the roof, where she was robbed of her money and sexually assaulted. The Court of Appeals affirmed the grant of summary judgment in the defendant's favor, finding, as a matter of law, that the defendant landowner did not owe any duty to the plaintiff. The court held that "[b]ecause defendant landowner had no relationship at all to the as-yet-unidentified wrongdoer whose presence on the street posed a threat to plaintiff's safety * * * and because this injured plaintiff had no association with the premises independent of the crime itself, the landowner's duty to maintain the security of the building may not be deemed to extend to her. This conclusion alone is fatal to her claim, regardless of whether the ultimate harm could be found to be reasonably foreseeable". *(Supra,* at 230-231.) The court found it significant that the landowner had "no control over either the acts of the primary wrongdoer or the conditions on the public byways that make such acts all too commonplace" and that defendant and other landowners would be exposed to "virtually limitless liabilities" if their legal obligations were extended to the plaintiff and all others in her position. *(Supra,* at 230.)

In *Einhorn v Seeley* (136 AD2d 122, *appeal dismissed* 72 NY2d 914), upon which the motion court properly relied in granting defendants summary judgment, this court established a two-pronged test to determine whether a landowner had a duty to protect an injured plaintiff from the criminal acts of a third party. Noting that "[t]here will ordinarily be no duty thrust on a defendant to prevent a third party from causing harm to another", this court held, "The exception may occur in the case where a special relationship exists between the defendant and the third person so as to give rise to a duty to control, or alternatively, when a special relationship exists between the defendant and the victim which gives the latter the right to protection * * *. Thus, such special relationships have been held to include employers-employees, owners and occupiers of premises, common carriers and their patrons, and hosts who serve alcoholic beverages to their guests, among others". *(Supra,* at 126.)

Not only is there an absence of any relationship here

between defendant landowners and the assailant or the victim, but the infant plaintiff was not even injured on defendants' premises. This is a significant circumstance further removing defendants from the sphere of a legal duty owed to plaintiffs. In the absence of any of these key relational elements, there is no basis upon which to impose a duty of care giving rise to tort liability. Indeed, to hold otherwise would be to ignore the teaching of the Court of Appeals (see, Waters v New York City Hous. Auth., supra; Pulka v Edelman, supra; see also, Strauss v Belle Realty Co., supra, 65 NY2d, at 403) and to create, contrary to public policy, an oppressive and unmanageable tort liability exposure. Where a duty of care does not exist as a matter of law, further fact finding is unnecessary and summary judgment dismissing the complaint should be granted.

Plaintiffs argue, and the majority holds, that the injury to the infant plaintiff was foreseeable in light of the alleged illegal use of the rented premises. Foreseeability, however, "should not be confused with duty"; foreseeability is used to define the scope of the duty but only after it has been determined that a duty exists. (Pulka v Edelman, supra, 40 NY2d, at 785.)

The majority holds that the "common law of long standing" —"the duty of the owner of a building, abutting upon a public street, to maintain it in such a condition that it shall not become dangerous to the traveling public" (Appel v Muller, 262 NY 278, 280)—establishes that the defendant landlords owed a duty to plaintiffs. This theory, however, has historically been limited to requiring the landlord to maintain the property itself—the structure or the land—in a safe condition and has never been extended to impose liability for a dangerous use of the premises, e.g., an alleged illegal drug operation.

While, as the majority notes, under Real Property Law § 231 (2) the owner of real property who knowingly permits the use of the property for any unlawful trade, manufacture or business is "liable * * * for any damage resulting from such unlawful use", we are unaware of any instance where this statute has been applied to impose tort liability for the acts of a third party who has no relation to the premises. Nor is there any authority to suggest that the Legislature ever intended such a result.

In addition to the absence of any legal duty owed to plaintiffs by defendants, the nature of the underlying tortious

conduct—a shooting assault by a criminal assailant—provides an independent basis for dismissing plaintiffs' claims. The shooting of the infant plaintiff on the sidewalk in front of defendants' premises, even though related to some unauthorized, illegal activity within, constitutes a superseding, intervening act which breaks the chain of causation between any alleged negligence on defendants' part and the injury to the infant plaintiff.

Plaintiffs allege, essentially, that defendants failed to take any action to evict a known drug dealer who, pursuant to a lease, occupied the streetfront store and used it illegally. They claim that numerous complaints were made to defendants of drug activities in the store in the year prior to the shooting, and that, in that same span of time, the police conducted at least five raids of the same premises. Thus, plaintiffs argue, the shooting of the infant plaintiff, as he walked on the public sidewalk in front of defendants' premises, was foreseeable and proximately caused by the latter's alleged failure to evict the drug-dealing tenant. Even if true, these factual allegations, which, as noted, are disputed, would not give rise to liability against defendants.

In *Santiago v New York City Hous. Auth.* (63 NY2d 761), the Court of Appeals affirmed the grant of summary judgment in favor of the landowner defendant where, as here, the plaintiff, who resided in a public housing project located in a neighborhood known for its criminal activity, was the victim of a shooting by a criminal assailant. The plaintiff, who alleged that the defendant was negligent in failing to repair a jammed exterior door, was shot when she was unable to open the door as she attempted to reenter the premises. The court held that "the intervening act of the unknown assailant was extraordinary and unforeseeable as a matter of law, and thus served to 'break the causal connection' between the defendant's negligence and the plaintiff's injuries". *(Supra,* at 763, quoting *Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 315.) The court also noted, "To hold the shooting incident a foreseeable consequence of the defendant's negligence would 'stretch the concept of foreseeability beyond acceptable limits' " (63 NY2d, at 763, quoting *Ventricelli v Kinney Sys. Rent A Car,* 45 NY2d 950, 952). Similarly, in *Iannelli v Powers* (114 AD2d 157, *lv denied* 68 NY2d 604), the court held that the intervening criminal acts of those responsible for a robbery and shooting severed the causal link between the conduct of the

defendants—the owners, tenant and subtenant—who failed to take adequate security measures to prevent such incidents.

As in *Santiago* and *Iannelli (supra)*, the criminal act of the unknown perpetrator in this case broke any possible causal connection between defendants' alleged failure to take action to evict their drug-dealing tenant and the shooting of the infant plaintiff. Moreover, even if defendants had taken some action in that regard, it cannot be held that such action would have been successful, or if successful, that it would have been timely so as to prevent the shooting. Indeed, according to plaintiffs' own factual recitation, the police, legally charged with the responsibility of law enforcement, were apparently unable to stop the tenant's illegal drug activity. Surely, it would be a severe and unacceptable burden to impose on a landlord the obligation, for the breach of which he could face tort liability for an unrelated third party's criminal acts, of undertaking to prove the existence of a tenant's illegal drug operation.

Moreover, unlike *Santiago* and *Iannelli (supra)*, the infant plaintiff here was injured, not on defendants' premises, but on the public street, over which defendants have no control. In such circumstances, plaintiffs' injury was, as a matter of law, extraordinary and unforeseeable.

Accordingly, the order appealed from should be affirmed.

ASCH and ELLERIN, JJ., concur with ROSENBERGER, J.; SULLIVAN, J. P., and CARRO, J., dissent in an opinion by SULLIVAN, J. P.

Order, Supreme Court, New York County, entered on July 11, 1988, reversed, on the law, and the complaint reinstated, without costs and without disbursements.