13-1628-cv
*Delollis v. Friedberg*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of February, two thousand fifteen.

PRESENT:    JOSÉ A. CABRANES,
            DENNY CHIN,
                    *Circuit Judges*.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JOHN DELOLLIS, IN HIS CAPACITY AS
TRUSTEE, TOM HOLSMAN, IN HIS CAPACITY
AS TRUSTEE, EMPIRE STATE CARPENTERS
WELFARE FUND, EMPIRE STATE CARPENTERS
ANNUITY FUND, EMPIRE STATE CARPENTERS
PENSION FUND, DOUGLAS MCCARRON, IN
HIS CAPACITY AS TRUSTEE, FRANK SPENCER,
IN HIS CAPACITY AS TRUSTEE,
                    *Plaintiffs-Appellants*,

_____

[1] The Honorable Raymond J. Lohier Jr., originally a member of this panel, recused himself from consideration of this case.  Accordingly, the appeal has been decided by the panel's remaining two judges pursuant to this Court's Internal Operating Procedure E(b).

v.                                                    13-1628-cv

FRIEDBERG, SMITH & CO., P.C.,
                    *Defendant-Appellee*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFFS-APPELLANTS:        ROBERT ALEXANDER (Daniel A. Zibel, *on the brief*), Bredhoff & Kaiser, P.L.L.C., Washington, DC.

FOR DEFENDANT-APPELLEE:        RICHARD A. SIMPSON (Megan L. Brown, J. Michael Connolly, Bryan K. Weir, *on the brief*), Wiley Rein LLP, Washington, DC., *and* Louis G. Corsi *and* Stephen Jacobs, *on the brief*, Landman Corsi Ballaine & Ford P.C., New York, New York.

Appeal from the United States District Court for the District of Connecticut (Stefan R. Underhill, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-appellants John DeLollis, Tom Holsman, Douglas McCarron, and Frank Spencer, in their capacity as Trustees of the Empire State Carpenters Welfare, Annuity, and Pension Funds (collectively, "Empire"), appeal from a judgment of the district court entered March 27, 2013, dismissing Empire's amended complaint,  which alleged claims of negligence and professional malpractice against defendant-appellee Friedberg, Smith & Co., P.C. ("Friedberg").  By memorandum and order entered that same day, the district court granted Friedberg's motion to dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6). Empire also appeals the district court's January 10, 2014 denial of its motion to vacate the judgment and for leave to file a second amended complaint. We assume the parties' familiarity with the facts, procedural history, and issues for review, which we summarize briefly below.

### A. The Facts

In their first amended complaint and proposed second amended complaint, Empire alleges the following facts: From December 2003 to December 2008, Empire invested millions of dollars in Beacon Associates LLC, Beacon Associates LLC I, and Beacon Associates LLC II (collectively, "Beacon"). Beacon, in turn, invested a large majority of its assets in Bernard L. Madoff Investment Securities LLC ("BLMIS"). Empire also invested substantial sums in other Madoff-related investments.

Friedberg served as an independent auditor for Beacon during the relevant time period and was responsible for performing annual audits on Beacon's financial statements. Friedberg sought to test certain assertions in Beacon's financial statements and requested information from BLMIS. BLMIS provided Friedberg with brokerage statements reflecting BLMIS's assets and transactions. Friedberg's annual audits of Beacon, the reports of which were provided to Empire, did not recognize that the investments in BLMIS were in fact not as represented and that the purported brokerage statements were fraudulent. Instead, Friedberg's annual audits "opined that the financial statements fairly presented the financial position of Beacon and of

[Empire's] capital accounts with Beacon." J.A. 236. As a result of Bernard Madoff's fraud, Empire suffered substantial investment losses. Empire contends that "[t]he audit evidence Friedberg . . . obtained regarding the Treasury Bills Madoff purportedly held on Beacon's behalf did not provide sufficient appropriate audit evidence as to the existence or value of the Treasury Bills," J.A. 235, and that Friedberg should have obtained sufficient audit evidence from BLMIS to have permitted it to uncover Madoff's fraud.

B.    **Proceedings Below**

On March 27, 2013, the district court dismissed Empire's claims, holding that Friedberg did not owe a duty to Empire with respect to "non-Beacon, Madoff-related investments" or Empire's decision to enter into arrangements with other pension funds. J.A. 212. The district court did, however, conclude that Empire adequately pleaded "near privity" with respect to Empire's existing Beacon-related investments. The district court nonetheless held that, while Friedberg owed some duty to Empire, the amended complaint could not survive because Empire did not adequately plead claims falling within the scope of Friedberg's duty to Empire. On April 24, 2013, Empire moved to vacate the judgment and for leave to file a second amended complaint. On January 10, 2014, the district court denied the motion from the bench, noting that there was "no substantial difference between the first amended complaint and the second amended complaint." J.A. 294. The district court concluded that amendment would be

- 4 -

futile, explaining that auditors are not the insurers of investors and do not have a duty to ferret out fraud by third parties.

## C. Discussion

We review the district court's grant of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) *de novo*. *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

We review the district court's denial of leave to amend *de novo* where "the denial was based on an interpretation of law, such as futility." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Proposed amendments are futile if they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.* Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss.

Two principal issues are presented: First, whether Friedberg owed a duty to Empire based on a near privity theory; and, second, assuming so, whether Empire alleged a plausible claim that Friedberg breached that duty.

### 1. Did Friedberg Owe a Duty to Empire?

Under New York law, an auditor has a duty to a non-contracting third party if the following prerequisites for near privity are satisfied: "(1) the [auditor] must

- 5 -

have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in the furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the [auditors] linking them to that party or parties, which evinces the [auditors'] understanding of that party or parties' reliance." *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551 (1985).

We agree with the district court that Empire has not sufficiently pleaded near privity between Empire and Friedberg with regard to non-Beacon Madoff-related investments or with regard to Empire's merger decisions. We also agree that Empire has adequately pleaded near privity between Empire and Friedberg with regard to its Beacon investments. The proposed second amended complaint alleges that Friedberg addressed reports directly to Empire, that Friedberg was aware that its reports would be used to make investments in Beacon, and that Empire would rely on its reports to do so. This alleged conduct is sufficient to link Empire to Beacon. *Cf. Prudential Ins. Co. of Am. v. Dewey, Ballantine, Bushby, Palmer & Wood*, 80 N.Y.2d 377, 385 (1992) (holding near privity existed between law firm and non-client third party where law firm addressed and sent opinion letter to non-client and knew non-client would rely on letter in making a debt restructuring decision).

## 2.    Did Empire Allege a Plausible Claim of Breach of Duty?

We next assess whether Empire has adequately pleaded claims that could fall within the scope of the duty owed by Friedberg to Empire.  While the question of the scope of an auditor's duty can raise issues of fact, including, for example, the extent to which a party contractually assumes responsibilities, *see, e.g., Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 469 (2d Cir. 1995), "[t]he question of the scope of an alleged [tortfeasor's] duty is, in the first instance, a legal issue for the court to resolve." *Waters v. New York City Hous. Auth.*, 69 N.Y.2d 225, 229 (1987); *see also Sanchez v. State of N.Y.*, 99 N.Y.2d 247, 252 (2002) (same).  Here, Empire essentially alleges that the scope of Friedberg's duty includes investigating conduct of a non-client third party.  We conclude as a matter of law that it does not.  *See Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994) ("the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for Judges to make prior to submitting anything to fact-finding").

In essence, Empire alleges that Friedberg was obliged to obtain additional information from BLMIS to verify the existence, accuracy, and value of Beacon's BLMIS investments.  Friedberg's obligation, however, was to audit Beacon, not BLMIS.  Empire fails to cite any provision of the Generally Accepted Auditing Standards ("GAAS") or Generally Accepted Accounting Principles that would impose such a duty.  While Empire is also careful not to allege that Friedberg had a duty to actually audit BLMIS,

- 7 -

this contention is at the foundation of its claims. Indeed, the proposed second amended complaint asserts that "a high quality and large quantity of audit evidence . . . was required in order to opine on whether Beacon's financial statements were presented fairly in all material respects." J.A. 235. The proposed second amended complaint was plainly alluding to audit evidence Empire contends Friedberg should have obtained not from Beacon, but from BLMIS. *Id.* at 235-36.

No auditing standard requires an auditing company to perform an audit on a non-client third party. Friedberg's duty involves "obtain[ing] sufficient appropriate audit evidence by performing audit procedures to afford a reasonable basis for an opinion regarding the financial statements under audit," including "reasonable, but not absolute, assurance that material misstatements are detected." GAAS §§ 110.02, 326.01. The auditing standards make clear that an auditor such as Friedberg "is not an insurer," nor does its audit report "constitute a guarantee." GAAS § 230.13. "The notion that a firm hired to audit the financial statements of one client . . . must conduct audit procedures on a third party that is not an audit client . . . on whose financial statements the audit firm expresses no opinion has no basis." *In re Tremont Sec. Law, State Law & Ins. Litig.*, 703 F. Supp. 2d 362, 371 (S.D.N.Y. 2010). To hold otherwise would result in the untenable situation where auditors would be required to audit every company in which its audit client has invested. Friedberg acted consistently with its duty when it

relied on financial statements provided by BLMIS, a registered broker-dealer, dealing with publicly traded Treasury Bills.

The identity of the third party here, BLMIS, is particularly important context in this case. As many courts have observed, Madoff was successful in concealing his fraud from countless sophisticated entities experienced in the financial world, including the SEC, Wall Street banks, and auditors. *See In re Merkin*, 817 F. Supp. 2d 346, 356 (S.D.N.Y. 2011). Numerous actions brought against auditors and investment advisors by victims of Madoff's fraud have been dismissed despite the presence of "red flags," which in hindsight arguably should have called attention to Madoff's illegal conduct. *See, e.g.*, *Meridian Horizon Fund, LP v. KPMG (Cayman)*, 487 F. App'x 636, 640-41 (2d Cir. 2012) (rejecting "allegations of fraud by hindsight" theory and affirming district court's conclusion that "the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving . . . financial professionals") (internal quotation marks omitted); *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 112-14 (2d Cir. 2009) (affirming district court's dismissal of securities fraud claim brought against investment advisor for lack of scienter despite presence of "red flags"); *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 377 (S.D.N.Y. 2011) (rejecting "fraud by hindsight" claim against auditor). This case is akin to the "red flag" cases. Here, however, Empire goes even further than alleging that Friedberg simply ignored the presence of red flags; instead, Empire alleges

that Friedberg had a duty to discover the red flags in the first place. Empire has cited to

no auditing standard to support that proposition.[2]

* * *

We have considered Empire's remaining arguments and conclude that

they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[2] In a Rule 28(j) letter received by the Court on January 29, 2015, Empire submitted a recent Fourth Department case holding that a trial court erred in dismissing a complaint because plaintiff sufficiently alleged that defendant accounting firm committed malpractice by failing to obtain a SAS 70 report regarding BLMIS. *Board of Trustees of IBEW Local 43 Elec. Contractors Health & Welfare, Annuity & Pension Funds v. D'Arcangelo & Co., LLP*, --- N.Y.S.2d ---, 2015 WL 26111 (App. Div. 4th Dep't Jan. 2, 2015). There, the plaintiff specifically alleged that the defendant accounting firm committed malpractice by failing to obtain a SAS 70 report. *Id.* at *1. Here, by contrast, the complaint does not mention SAS 70 or cite to any specific auditing standard breached by Friedberg; instead the complaint discusses the auditing standards in broad strokes, arguing that the general standards embody the duty to audit a non-client third party. **[JA227-31].** We do not understand *D'Arcangelo* to stand for the proposition advanced here by Empire that an auditor has a comprehensive duty to verify the existence, accuracy, and value of a non-client third party's investments.

- 10 -