Bichaed S. Heller, J.
Eighteen hours after claimant had .been admitted to the Elmira Bef ormatory he was slashed across .the neck with a razor blade wielded by another inmate. This claim is for damages sustained in this altercation.
Claimant was sentenced to the Elmira Bef ormatory in November, 1956. On November 28,1956, he was taken with three other prisoners from city prison in New York City by two officers who brought the four by train to Elmira and turned them over to officials of the reformatory.
During the train ride from Hoboken to Elmira, which took approximately seven hours, the claimant was manacled to one Pomoles. The other two prisoners were manacled together and faced Spadaro and Pomoles. The guards were in another seat away from their charges.
Claimant testified that during the ride Pomoles became very excited and felt that he was being taken away to be electrocuted. Claimant further testified that Pomoles made threats of killing someone and was disturbed during most of the trip. This behavior was reported to the guards who attempted to mollify Pomoles by explaining to him that he would not be harmed. All .of this was done by a prisoner acting as an interpreter since Pomoles understood very little English.
After being turned over to the reformatory officials all four of the prisoners were taken to an induction center, given clothes, had hair cuts and were then fed. On the following morning they had physical examinations at which time Pomoles was disturbed but not sufficiently to alarm the attendants who had often encountered difficulties with new prisoners. They were taken ,to a large hall and told to read until the officials were ready to start an indoctrination course. The course was to be held in ,a hall adjoining the barber shop. The door to the barber shop was open. The guard had left the hall and the prisoners were unattended. It was while they were reading that Pomoles assaulted the claimant.
In order to charge the State with negligence it must be shown that they failed to protect the claimant from a known dangerous *491 prisoner or that they failed to use adequate supervision to stop that which could be reasonably foreseen. (Flaherty v. State, 296 N. Y. 342.)
Outside of claimant’s own testimony, the record fails to show anything that can be construed as requiring the reformatory officials to proceed with Pomoles any differently than they did with any other prisoner. There is no evidence that the guards bringing the prisoners disclosed any dangerous tendencies to the State or that they felt the mumblings of Pomoles were unusual. The State was not bound to prove that the guards bringing the prisoners to Elmira were not State officials since section 290 of the Correction Law indicates they were not. There is no proof that the State had any knowledge that Pomoles was unstable. The record is barren of any evidence that anyone except the claimant felt Pomoles was dangerous.
There is no proof that Pomoles acquired the razor blade from the barber shop or that Pomoles was in the barber shop. There is no proof of where or when any razor blades were kept or for what purposes.
The absence of the supervisor for a short period of time when the four were left alone does not in itself constitute a lack of care, except perhaps for his own safety, where he was without nny knowledge that Pomoles was about to become extremely antisocial.
The claimant has failed to establish that the State was negligent. The claim is dismissed.