*581
 
 OPINION OF THE COURT
 

 Titone, J.
 

 Injured by another customer’s runaway car while he was on the premises of a self-service filling station, plaintiff sued the premises owner on the theory that it had a duty to ensure that all of its customers abided by regulations requiring their vehicle engines to be turned off during the operation of the gas pumps. We conclude, however, that defendant filling station owner had no duty to protect its customers from the unforeseeable occurrence that led to plaintiff’s injury and that, accordingly, the complaint against that defendant was properly dismissed.
 

 Defendant United Refining Co. (URC) owns and operates a self-service filling station in Rochester. According to the complaint allegations and summary judgment submissions, the injury-producing accident occurred on defendant’s premises on April 15,1991. At about 1:00 p.m. on that date, plaintiff Richard Di Ponzio drove into defendant’s gas station, exited his car and began to fill his tank with fuel. At approximately the same time, defendant Michael Riordan drove his car into the gas station, stopped opposite plaintiff’s vehicle and, without turning off his engine, began pumping gas into his vehicle. Riordan stated during his deposition testimony that the pavement was relatively level and that he placed his console gearshift in the park position.
 

 Riordan took about five minutes to pump gas into his car and then went inside the gas station’s storefront enclosure to pay the attendant for his fuel. He left his vehicle running because he had been experiencing problems with the carburetor and was afraid that he would not be able to restart the vehicle if he turned its ignition off. When he exited the store and began walking toward the car, he noticed that it was moving backward toward the rear of plaintiff’s vehicle, where plaintiff was still pumping gas. Riordan moved toward the vehicle, but he was unable to reach it in time to stop it from striking plaintiff. Plaintiff, who was pinned between the two cars, suffered a fractured leg.
 

 Plaintiff and his spouse subsequently commenced the present personal injury action against Riordan and URC. Plaintiffs’ theory against defendant URC was that it had been negligent in failing to properly train its attendants and that its attendants had been negligent in failing to comply with URC rules requiring that customers be warned to turn off their
 
 *582
 
 engines while fueling their vehicles. In support of their claim, plaintiffs cited information obtained during discovery that URC attendants were not supposed to allow customers to pump gas while their engines were running and that the attendants had the ability to turn off a particular pump in the event that a customer refused to comply. They also relied on deposition testimony that on the day of the accident URC’s attendants had deliberately turned down the sound on an intercom system that would otherwise have enabled them both to hear the sound of Riordan’s engine and to admonish him to turn it off.
 

 Following discovery, defendant URC moved for summary judgment dismissing the complaint on several grounds, including the lack of a cognizable legal duty, the lack of a proximate causal relationship between its alleged negligence, if any, and the accident and the unforeseeability of the accident. Supreme Court denied the motion, holding that URC, as the premises owner, had a duty to exercise reasonable care and that the questions of foreseeability and proximate cause should be resolved by the fact finder.
 

 On URC’s appeal, the Appellate Division reversed and dismissed the complaint against URC. Two of the Justices concluded that URC should not be held liable because the accident was not foreseeable. A third Justice concurred on the separate ground that URC had no duty to protect its customers from "the unforeseeable risk that another patron’s car would suffer a mechanical malfunction or inexplicably jump into gear.” (224 AD2d 139, 147.) Additionally, the concurrer opined that any alleged negligence on URC’s part was not the proximate cause of the accident. The remaining two Appellate Division Justices dissented for the reasons set forth in the Supreme Court opinion. Plaintiffs then appealed to this Court pursuant to CPLR 5601 (a).
 
 [1]
 

 The threshold issue in this negligence action is whether defendant URC had a legally cognizable duty to prevent the accident in which plaintiff Di Ponzio was injured
 
 (see generally, Palka v Servicemaster Mgt. Servs. Corp.,
 
 83 NY2d 579, 584-585). It is beyond dispute that landowners and business proprietors have a duty to maintain their properties in reasonably safe condition
 
 (see, e.g., Kush v City of Buffalo,
 
 59 NY2d 26;
 
 Basso v Miller,
 
 40 NY2d 233). It is also clear that this duty may extend to controlling the conduct of third persons who
 
 *583
 
 frequent or use the property, at least under some circumstances (see,
 
 Pulka v
 
 Edelman, 40 NY2d 781, 783). The duty of a landowner or other tort defendant, however, is not limitless. It is an elementary tenet of New York law that "[t]he risk reasonably to be perceived defines the duty to be obeyed”
 
 (Palsgraf v Long Is. R. R. Co.,
 
 248 NY 339, 344).
 

 The existence and scope of an alleged tortfeasor’s duty is, in the first instance, a legal question for determination by the court
 
 (see, Palka v Servicemaster Mgt. Servs. Corp., supra,
 
 at 585). In analyzing questions regarding the scope of an individual actor’s duty, the courts look to whether the relationship of the parties is such as to give rise to a duty of care
 
 (see, e.g., Waters v New York City Hous. Auth.,
 
 69 NY2d 225;
 
 Pulka v Edelman, supra,
 
 at 783), whether the plaintiff was within the zone of foreseeable harm
 
 (see, e.g., Palsgraf v Long Is. R. R. Co.,
 
 supra) and whether the accident was within the reasonably foreseeable risks
 
 (see, e.g., Danielenko v Kinney Rent A Car,
 
 57 NY2d 198). The nature of the inquiry depends, of course, on the particular facts and circumstances in which the duty question arises. The analysis is also driven by considerations of public policy. As we stated in
 
 Waters v New York City Hous. Auth. (supra,
 
 at 229), "[t]he common law of torts is, at its foundation, a means of apportioning risks and allocating the burden of loss.”
 

 In this case, the focus of the inquiry is on the foreseeability of the risk. Foreseeability of risk is an essential element of a fault-based negligence cause of action because the community deems a person at fault only when the injury-producing occurrence is one that could have been anticipated (Prosser and Keeton, Torts § 31, at 169-170, and n 15 [5th ed]). Further, although virtually every untoward consequence can theoretically be foreseen "with the wisdom born of the event”
 
 (Greene v Sibley, Lindsay & Curr Co.,
 
 257 NY 190, 192), the law draws a line between remote possibilities and those that are reasonably foreseeable because "[n]o person can be expected to guard against harm from events which are * * * so unlikely to occur that the risk * * * would commonly be disregarded” (Prosser and Keeton,
 
 op. cit,
 
 § 31, at 170;
 
 see, e.g., Danielenko v Kinney Rent A Car, supra).
 

 A
 
 related problem, also implicated here, is the need to analyze the relationship between the risk created by the actor’s conduct and the actual occurrence that caused the harm. It is often said that plaintiffs need not demonstrate the foreseeability of the precise manner in which the accident occurred or
 
 *584
 
 the precise type of harm produced in order to establish the foreseeability component of their tort claims
 
 (e.g., Palsgraf v Long Is. R. R. Co.,
 
 248 NY 339, 344, supra;
 
 Bahan v Green Bus Lines,
 
 96 AD2d 876,
 
 affd on opn below
 
 61 NY2d 922;
 
 see also, Derdiarian v Felix Contr. Corp.,
 
 51 NY2d 308). This principle is sometimes mistakenly cited to support an argument that a careless act should lead to liability even though the injury-producing accident itself occurred in an unexpected manner. Such arguments, however, are misguided to the extent that they fail to recognize the analytically important distinction between the concept of risk or hazard and the concept of harm.
 

 The Restatement (Second) of Torts is useful in clarifying this often misconstrued principle. As is explained in section 281, comment
 
 e,
 
 conduct is considered negligent when it tends to subject another to an unreasonable risk of harm arising from one or more
 
 particular
 
 foreseeable hazards (Restatement [Second], of Torts § 281, at 6). When the person is harmed by an occurrence resulting from one of those hazards, the negligent actor may be held liable. In contrast, where the harm was caused by an occurrence that was not part of the risk or recognized hazard involved in the actor’s conduct, the actor is not liable
 
 (see, id.,
 
 comment
 
 f).
 
 The following example taken directly from the Restatement provides a useful illustration of the point:
 

 "A gives a loaded pistol to B, a boy of eight, to carry to C. In handing the pistol to C the boy drops it, injuring the bare foot of D, his comrade. The fall discharges the pistol, wounding C. A is subject to liability to C, but not to D”
 
 (id.,
 
 comment
 
 f,
 
 illustration 3, at 7).
 

 As this hypothetical fact pattern makes clear, where an individual breaches a legal duty and thereby causes an occurrence that is within the class of foreseeable hazards that the duty exists to prevent, the individual may be held liable, even though the harm may have been brought about in an unexpected way. On the other hand, no liability will result when the occurrence is not one that is normally associated with such hazards. Significantly, the kind and number of hazards encompassed within a particular duty depend on the nature of the duty
 
 (see, id.,
 
 comment
 
 e).
 

 The gist of plaintiffs’ claim is that defendant URC’s servants were negligent in failing to monitor its customers’ conduct and, more specifically, in failing to require Riordan to turn off
 
 *585
 
 his vehicle’s engine despite having had the means and obligation to do so. Assuming without deciding that URC had a duty to control its customer’s conduct in this manner
 
 (cf., Stone v Williams,
 
 64 NY2d 639, 641, 642), the existence of such a duty would not aid plaintiff Di Ponzio’s case, since his injuries did not arise from the occurrence of any of the foreseeable hazards that the duty would exist to prevent.
 

 When a vehicle’s engine is left running in an area where gasoline is being pumped, there is a natural and foreseeable risk of fire or explosion because of the highly flammable properties of the fuel. Indeed, the local ordinance plaintiffs cite as one source of support for the existence of a duty to direct gas station patrons to turn off their engines is, in fact, contained within the City of Rochester Fire Prevention Code, whose stated purpose is to safeguard against "the hazards of fire and explosions”
 
 {see,
 
 City of Rochester Fire Prevention Code § 54-l).
 
 [2]
 
 It is this class of foreseeable hazards that defines the scope of the URC’s purported duty.
 

 The occurrence that led to plaintiff’s injury was clearly outside of this limited class of hazards. Plaintiff was injured because the parking gear of another customer’s car inexplicably failed and the unattended vehicle, which had rested stationary on a level surface for more than five minutes, suddenly began to. move backwards, pinning plaintiff between its rear bumper and the bumper of his own car. Because this type of accident was not among the hazards that are naturally associated with leaving a car engine running during the operation of a gas pump, the alleged misconduct of URC’s employees does not give rise to liability in tort. Indeed, plaintiff’s position in this case is analogous to that of the child whose foot was injured by the plummeting pistol in the Restatement hypothetical. Moreover, while plaintiff’s accident may have been an indirect consequence of the station attendant’s failure to direct Riordan to turn off his engine, the accident was, at most, a remote possibility at the time the conduct in question occurred and thus was not a
 
 foreseeable
 
 consequence of the attendant’s inaction,
 
 *586
 
 even though the risk may now readily be perceived through hindsight
 
 (see,
 
 Prosser and Keeton,
 
 op. cit,
 
 § 31, at 170 ["It is not enough that everyone can see now that the risk was great, if it was not apparent when the conduct occurred”]). Accordingly, as a matter of law defendant URC had no cognizable legal duty to protect against the injury-producing occurrence and plaintiff’s cause of action based on URC’s own alleged negligence was properly dismissed.
 

 We note our rejection of plaintiffs’ alternative argument that URC may be held
 
 vicariously
 
 liable for any negligence on the part of defendant Riordan. There was no master-servant or other similar relationship between URC and Riordan that would serve under existing law as a basis for holding the former responsible for the misconduct of the latter without regard to fault. Further, the element that is most often associated with the imposition of vicarious liability — i.e., legal or actual authority over the negligent actor — was absent and there is thus no persuasive reason to extend the doctrine of vicarious liability to these circumstances
 
 (see, Kavanaugh v Nussbaum,
 
 71 NY2d 535). Hence, plaintiffs have no legal ground for asserting a claim against defendant URC.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur; Judge Wesley taking no part.
 

 Order affirmed, with costs.
 

 [1]
 

 . Defendant Riordan also appealed, assertedly to preserve his cross claims.
 

 [2]
 

 . The specific provision plaintiffs have cited is section 54-22 (Q) of the City of Rochester Fire Prevention Code. That section requires filling stations to post warning signs directing their customers not to smoke and to "[s]top motor[s] during fueling operation.” The other provision on which plaintiffs rely, Vehicle and Traffic Law § 1210 (a) (see, 1954 NY Legis Doc No. 36, at 106-107), is irrelevant to this controversy because it concerns the duty of a "person * * * in charge of a motor vehicle” rather than the duty of a filling station owner. Moreover, by its terms, the statute regulates conduct on public streets, not on private premises.