■ JONATHAN B. WOLFE, as Limited Administrator of the Estate of KATHERINE A. WOLFE, Deceased, Respondent, v COUNTY OF CATTARAUGUS et al., Respondents, and JAMES H. TINGUE, SR., Appellant. JEANNE C. NICHOLS et al., as Appointed Guardians of DAMON L. BROWN, an Infant, Respondents, v COUNTY OF CATTARAUGUS et al., Respondents, and JAMES H. TINGUE, SR., Appellant. JEANNE C. NICHOLS et al., as Appointed Guardians of TONYA L. BROWN, an Infant, Respondents, v COUNTY OF CATTARAUGUS et al., Respondents, and JAMES H. TINGUE, SR., Appellant. RONALD E. BRIDENBAKER et al., Individually and as Parents and Natural Guardians of JOHN K. BRIDENBAKER, an Infant, Respondents, v COUNTY OF CATTARAUGUS et al., Respondents, and JAMES H. TINGUE, SR., Appellant. GARY L. BROWN, Individually and as Administrator of the Estate of DONNA L. BROWN, Deceased, Respondent, v COUNTY OF CATTARAUGUS et al., Respondents, and JAMES H. TINGUE, SR., Appellant, et al., Defendant. [659 NYS2d 634] —Order affirmed with costs. Memorandum: We affirm for reasons stated at Supreme Court (Feeman, Jr., J.). Furthermore, for

the dissent to maintain that James H. Tingue, Sr. (defendant), owed no duty to plaintiffs' decedents and plaintiffs' infants is tantamount to a determination that one who creates a dangerous condition is not responsible for the foreseeable consequences of his conduct. That theory was rejected long ago (see, *Palsgraf v Long Is. R. R. Co.,* 248 NY 339, *rearg denied* 249 NY 511).

"There is no basis on this record for concluding, as a matter of law, that a superseding cause or other factor intervened to break the nexus between defendant's negligence and plaintiff's injury" (*Derdiarian v Felix Contr. Corp.,* 51 NY2d 308, 312, *rearg denied* 52 NY2d 784). The record establishes that the accident occurred at night on an unlit country road, at a time when the visibility was impaired due to foggy conditions and apparently some traffic control signs were obscured by foliage. Defendant therefore created a dangerous condition when he knocked down the double arrow sign warning motorists that the highway ended and it was necessary to turn left or right. Thus, plaintiffs' decedents and plaintiffs' infants, who were traveling on that road within the hour after the prior accident, were within the zone of foreseeable harm so as to give rise to a reasonable duty of care (see, *Di Ponzio v Riordan,* 89 NY2d 578). Under the factual circumstances herein, defendant's negligence may have been a proximate cause of the injuries. Resolution of that issue is for the jury.

All concur except Lawton and Doerr, JJ., who dissent and vote to reverse in the following Memorandum.

Lawton and Doerr, JJ. (dissenting). On the evening of July 10, 1993, two separate one-car accidents occurred within 45 minutes at the "T" intersection of New York State Routes 62 and 322. Route 62 runs in a generally north-south direction and Route 322, which terminates at Route 62, runs in a generally east-west direction. On the date of the accident, the "T" intersection was governed by two stop signs, posted on the north and south sides of Route 322, facing eastbound traffic. In addition, "Stop Ahead" signs were posted for eastbound traffic on Route 322, about 1,000 feet before the intersection. There also was a yellow double arrow directional sign posted on Route 62 facing eastbound traffic on Route 322 indicating that vehicles must turn right or left.

At approximately 10:30 P.M., James H. Tingue, Sr. (defendant), was operating a motor vehicle eastbound on Route 322 when he failed to stop for the stop sign at the "T" intersection of Route 322 and Route 62 and crashed into a drainage ditch and earthen embankment after crossing Route 62. Defendant's

vehicle also knocked down the yellow double arrow sign located on the side of Route 62, facing eastbound traffic on Route 322. The Cattaraugus County Sheriff's Department investigated the accident and placed defendant under arrest for driving while intoxicated. Defendant was then taken to the police station for a breathalyzer test. A tow truck was called and defendant's vehicle was removed from the accident scene at approximately 11:00 P.M.

At approximately 11:16 P.M., Donna L. Brown was operating a motor vehicle eastbound on Route 322 when she similarly failed to stop at the "T" intersection, traveled across Route 62 and crashed into the drainage ditch and earthen embankment. As a result of the accident, Ms. Brown and her two front seat passengers, her teenage daughter Stacy Brown and Ms. Brown's friend Katherine A. Wolfe, were killed. Three passengers in the back seat, who were all asleep at the time of the accident, sustained serious personal injuries.

Plaintiffs commenced five separate actions asserting causes of action for wrongful death and personal injury against the County of Cattaraugus (County), the Cattaraugus County Sheriff's Department (Sheriff's Department) and defendant. Plaintiffs allege that the signs at the intersection were negligently maintained by the County and obscured by foliage and that the Sheriff's Department breached its duty to provide adequate police protection at the intersection following the first accident. Plaintiffs allege that defendant was negligent in knocking down the yellow double arrow informational sign and that his negligence was a proximate cause of the second accident.

These actions were consolidated for trial. Multiple motions for summary judgment followed. We are concerned only with defendant's motion for summary judgment. In support of his motion, defendant submitted an affirmation of his attorney in which he argued that defendant owed no duty to plaintiffs' decedents and plaintiffs' infants and that, even if such duty existed, the absence of the yellow double arrow sign was not a proximate cause of the second accident.

In *Di Ponzio v Riordan* (89 NY2d 578, 583), the Court of Appeals stated the law with respect to duty as follows: "The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the court (*see, Palka v Servicemaster Mgt. Servs. Co.*, [83 NY2d 579] * * * 585). In analyzing questions regarding the scope of an individual actor's duty, the courts look to whether the relationship of the parties is such as to give rise to a duty of care (*see, e.g.,*

*Waters v New York City Hous. Auth.,* 69 NY2d 225; *Pulka v Edelman,* [40 NY2d 781] * * * 783, [*rearg denied* 41 NY2d 901]), whether the plaintiff was within the zone of foreseeable harm (*see, e.g., Palsgraf v Long Is. R. R. Co.,* [248 NY 339, *rearg denied* 249 NY 511]) and whether the accident was within the reasonably foreseeable risks (*see, e.g., Danielenko v Kinney Rent A Car,* 57 NY2d 198). The nature of the inquiry depends, of course, on the particular facts and circumstances in which the duty question arises. The analysis is also driven by considerations of public policy. As we stated in *Waters v New York City Hous. Auth. (supra,* at 229), '[t]he common law of torts is, at its foundation, a means of apportioning risks and allocating the burden of loss.' "

Applying the foregoing test to the facts of this case, we conclude that defendant owed no duty to plaintiffs' decedents and plaintiffs' infants. The duty of defendant regarding the safe operation of his vehicle extended to those at or near the scene of the accident at the time it occurred. That duty ceased once defendant and his vehicle were removed from the scene and control of the intersection returned to the governmental authorities. There was no relationship between defendant and plaintiffs' decedents and plaintiffs' infants other than that they traveled the same highway some 45 minutes apart. Defendant could not reasonably foresee that another operator of a vehicle would, like himself, travel through a series of traffic warning signs and two stop signs. Even if that event were foreseeable, it would not create a duty, but rather would merely define the scope of the duty (*see, Pulka v Edelman, supra,* at 785).

Moreover, no public policy would be furthered by holding that a user of a highway following an accident has a duty to subsequent users, after the highway reverted to governmental control. Operators of vehicles are not required to clean roadways of debris, replace lighting or replace signs. To impose such a duty is to ignore reality. As stated by the Court of Appeals in *Pulka v Edelman (supra,* at 786): "If a rule of law were established so that liability would be imposed in an instance such as this, it is difficult to conceive of the bounds to which liability logically would flow. The liability potential would be all but limitless and the outside boundaries of that liability, both in respect to space and the extent of care to be exercised, particularly in the absence of control, would be difficult of definition."

In that vein, defendant cannot be held liable for all subsequent accidents based on his negligence in the first accident, which set in motion a series of remote events over which he had no control.

Plaintiffs' allegation that the lack of the traffic sign caused or contributed to the happening of the second accident does not alter that result. The failure to maintain the sign that allegedly caused the injuries of plaintiffs' decedents and plaintiffs' infants was an occurrence that was not part of the risk associated with driving a vehicle (*see, Di Ponzio v Riordan, supra*). Consequently, defendant had no duty to plaintiffs' decedents and plaintiffs' infants with respect to the erection or the maintenance of that sign. Indeed, he had no authority over the sign whatsoever. Absent any duty, there can be no breach and, absent a breach, there can be no liability (*see, Pulka v Edelman, supra*, at 782; *Kimbar v Estis*, 1 NY2d 399, 405).

We would reverse and grant the motion of defendant for summary judgment dismissing the complaint against him. (Appeal from Order of Supreme Court, Cattaraugus County, Feeman, Jr., J.—Summary Judgment.) Present—Green, J. P., Lawton, Callahan, Doerr and Boehm, JJ. .