Gilmar **SAMPAIO** and Anna Sampaio, Plaintiffs,

v.

**ATLANTIC–HEYDT, LLC,** Pavarini Construction Co., Inc., Solow Building Company, L.L.C., JDP Mechanical, Inc., "John Does 1–5," individually and as agents servants and/or employees of Atlantic–Heydt, LLC., "John Does 6–10," individually and as agents servants and/or employees of Pavarini Construction Co., Inc., "John Does 11–

15," individually and as agents servants and/or employees of Solow Building Company, L.L.C., and "John Does 16–20," individually and as agents servants and/or employees of JDP Mechanical, Inc., Defendants.

No. 02 Civ. 1201(VM).

United States District Court, S.D. New York.

Dec. 2, 2003.

Michael Garabedian, Great River, NY, for plaintiff.

Thomas J. Hall, Fabiani and Cohen, L.L.P., New York City, Roger P. McTiernan, Jr., Barry, McTiernan & Moore, New York City, for defendants.

## DECISION AND ORDER

MARRERO, District Judge.

This diversity action arises from an unknown person's prank at a construction site that caused plaintiff Gilmar Sampaio ("Sampaio") to suffer a severe eye injury. Sampaio alleges that four companies connected to the construction at the site were negligent in failing to prevent the injury. On defendants' motion for summary judgment, the Court concludes that Sampaio has not raised a genuine issue of material fact to establish that defendants breached a duty of care owed to Sampaio, or that defendants were otherwise negligent in connection with his injury. Defendants' motion is granted.

## I. BACKGROUND[1]

Sampaio worked as a mason at the construction site of a 45–story residential building in midtown Manhattan. On August 10, 2001, Sampaio was grinding the ceiling of the 14th floor of the building. On the same floor at approximately 2:30 p.m., an unknown person had placed an empty plastic water bottle over the nozzle of an oxygen tank used for welding, and then opened the tank's valve. The bottle expanded and then exploded. Several pieces of plastic lodged in Sampaio's right eye as Sampaio walked by the oxygen tank on his way to the elevator. Doctors eventually had to remove Sampaio's right eye and replace it with a prosthetic eye. There were no witnesses to the incident, and the person responsible for the prank has not been identified.

Defendant JDP Mechanical, Inc. ("JDP") was the steam fitter subcontractor on the project and owned the oxygen tank. JDP had used the tank earlier that day to braze copper piping but had stopped working for the day sometime before the accident. After finishing with the tank, JDP tied it to a concrete column. Defendant Pavarini Construction Co., Inc. ("Pavarini," and collectively with JDP, "Defendants") was the project manager.[2]

Sampaio alleges that Defendants were negligent for having failed to prevent the accident. Specifically, Sampaio alleges that Defendants should have stowed the oxygen tank in a safer location and ensured that there was a safety cap to cover the tank's nozzle.

## II. STANDARD FOR A SUMMARY JUDGMENT MOTION

The Court may grant summary judgment only "if the pleadings, depositions,

---

1. The factual summary derives from: (1) Affirmation in Support of Defendants' Motion for Summary Judgment, dated Sept. 11, 2003; (2) Statement Pursuant to Rule 56.1 of the Rules of the United States District Courts for the Southern and Eastern Districts of New York, dated Sept. 11, 2003; (3) Affirmation on Opposition to Defendants' Motion for Summary Judgment, dated Sept. 27, 2003; and (4) Plaintiffs' Counter Statement of Material Facts on Motion for Summary Judgment Pursuant to S.D.N.Y. Local Rule 56.1, dated Oct. 1, 2003, along with the exhibits attached to those documents. Except where necessary, the Court will not cite these sources further.

2. The complaint also names Atlantic–Heydt, LLC, and Solow Building Company, L.L.C., as defendants. Those parties deny any involvement in the construction site, and Sampaio has offered nothing to connect those defendants to the facts underlying this lawsuit. Accordingly, the Court dismisses all claims against those defendants.

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must first look to the substantive law of the action to determine which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Even if the parties dispute material facts, summary judgment will be granted unless the dispute is "genuine," *i.e.*, "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

In a case such as this one where the non-moving party would bear the burden of proof at trial, the movant first has the burden to make a *prima facie* case that it is entitled to prevail on the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant can meet this burden by either "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or "demonstrat[ing] to the Court that the nonmoving party's evidence is insufficient to establish an essential element" of the claim. *Id.* After such a showing, the non-moving party must respond with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). To this end, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir.1998). In other words, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Presenting a mere "scintilla of evidence" is not enough for the non-movant to defeat the motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

Throughout this inquiry, the Court must view the evidence in the light most favorable to the non-moving party and must draw all inferences in favor of that party. *See Hanson v. McCaw Cellular Communications, Inc.*, 77 F.3d 663, 667 (2d Cir. 1996).

### III. DISCUSSION

██ "In order to prevail in a negligence action under New York law, the plaintiff must prove (1) that there was a duty owed to the plaintiff, (2) lack of due care by the defendant, (3) injury, and (4) the injury was proximately caused by the defendant's breach of duty." *Japan Airlines Co. v. Port Authority*, 178 F.3d 103, 108 (2d Cir.1999). Where plaintiff alleges the defendant is liable for the dangerous condition of a property, "the plaintiff must demonstrate that the defendant created the condition which caused the accident or that the defendant had actual or constructive notice of the condition." *Shy v. City of New York*, 266 A.D.2d 275, 699 N.Y.S.2d 423, 424 (App. Div.2d Dep't 1999). "To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. American Museum of Natural History*, 67 N.Y.2d 836, 501 N.Y.S.2d 646, 492 N.E.2d 774, 775 (1986).

██ Under some circumstances, a statute or regulation may provide the Court with the relevant standard of care. *See, e.g., Wolfson v. Glass*, 301 A.D.2d 843, 754

N.Y.S.2d 82, 83–84 (App. Div.3d Dep't 2003). In such cases, "[v]iolation of such a statutory standard, if unexcused, constitutes negligence per se so that the violating party must be found negligent if the violation is proved." *Dance v. Town of Southampton,* 95 A.D.2d 442, 467 N.Y.S.2d 203, 206 (App. Div.2d Dep't 1983).

Sampaio puts forth three theories under which a jury could find Defendants liable for negligence. First, Sampaio suggests that Defendants should have known of the risk of the prank that caused his injury because there had been a similar incident approximately one month prior to Sampaio's accident. Sampaio testified that he heard a loud bang which, according to what he heard from talking to deputy foreman Frank Casali ("Casali"), had been caused by a similar prank. Casali testified at his deposition that he remembered hearing a loud explosion on one occasion soon before Sampaio's accident, but he specifically testified that he never discovered the cause of the explosion. He also testified that he had never heard of such a prank prior to the incident which injured Sampaio. None of the other deposed witnesses recalled any prior similar incident.

■ The Court finds that there is not triable issue of fact on this point because the *only* evidence of a prior similar incident that Sampaio presents is his own testimony, which was admittedly not based on personal knowledge but arguably hearsay. In fact, his testimony is grounded on what he allegedly heard from Casali, who specifically denied any knowledge of a previous similar prank. Without the testimony of any witness with personal knowledge, or any other form of evidence, Sampaio has failed to raise a triable fact issue as to whether the type of prank at issue here had occurred at Defendants' construction site before.

■ Second, Sampaio argues that the oxygen tank's valve protection cap may not have been properly in place. A valve protection cap is a threaded metal cup which, when screwed to the top of a compressed gas tank, prevents the valve from opening. Federal regulations require that valve protection caps "be in place and secured" while compressed gas tanks are stored. 29 C.F.R. § 1926.350(a)(1). Pavarini foreman Ronald Loadholt testified that, as part of a safety walk-through, he saw the cap in place just before the accident. He also testified that after the accident he noticed the cap on the floor below the tank. None of the other deposed witnesses recalled seeing the cap after the accident and its whereabouts are apparently unknown.

Sampaio argues that these facts support the inference that Defendants negligently failed to cap the oxygen tank. The Court concludes, however, that Sampaio's arguments on this point are purely speculative and cannot survive summary judgment. There is no testimony or other evidence to counter Loadholt's assertion that he saw the tank capped just before the accident. Even were the Court to agree with Sampaio that the cap was missing *after* the accident, that fact hardly supports the inference necessary– *i.e.,* that somebody whose actions could be imputed as a matter of law to Defendants removed the cap in the short window before the accident, or that Defendants somehow were made actually or constructively aware of the missing cap in the short interval before the accident and had sufficient opportunity to remedy the condition.

■ Third, Sampaio argues that the oxygen tank was not safely secured to protect against tampering. He directs the Court's attention to federal and state safety regulations requiring that oxygen tanks be stored where they will not be subject to "tampering by unauthorized persons." 29 C.F.R. § 1926.350(a)(11); N.Y. Comp.

Codes R. & Regs. tit. 9 § 1178.[3] Sampaio argues that there was virtually no security at the worksite to prevent unauthorized persons from gaining access to the site. Workers were not required to wear identification badges, nor was there any video surveillance. Moreover, record testimony indicates that there was a designated area on the first floor of the building where JPD had stowed other compressed gas tanks. That storage area remained locked, except when tanks were either stowed or removed.

It is undisputed that the tank was stored upright and tied to a column and away from fire or combustible materials. This accords with relevant federal and state regulations. *See* 29 CFR §§ 1926.350(a)(9), (b); N.Y. Comp.Codes R. & Regs. tit. 12 § 23–1.25(a)(1). Sampaio's only complaint about the location of the tank is that it was "subject to tampering by unauthorized persons" because it was out in the open, instead of under lock-and-key. *See* 29 C.F.R. § 1926.350(a)(11). Importantly, however, Sampaio has not cited any statute or regulation requiring that compressed gas tanks be locked away, nor has he put forth any evidence – apart from this one tragic occurrence – to suggest that unauthorized persons had access to the tank in its location as fastened to the column. The Court will not read the broad language in the regulations as making the specific directive Sampaio urges.

These arguments, however, inform a related inquiry. The Court must next address the question of whether, apart from the language of the regulation, Defendants had a duty to protect against this type of risk by securing the oxygen tank somewhere safer. That is a purely legal question. *See Di Ponzio v. Riordan,* 89 N.Y.2d 578, 657 N.Y.S.2d 377, 679

N.E.2d 616, 618 (1997). To this end, the Court must consider "whether the accident was within the reasonably foreseeable risks" of the particular situation. *Id.* "Foreseeability of risk is an essential element of a fault-based negligence cause of action because the community deems a person at fault only when the injury-producing occurrence is one that could have been anticipated." *Id.* The Court must also allow public policy considerations "to tailor [its] notion of duty so that 'the legal consequences of wrongs [are limited] to a controllable degree.'" *Waters v. New York City Housing Auth.,* 69 N.Y.2d 225, 513 N.Y.S.2d 356, 505 N.E.2d 922, 924 (1987) (quoting *Tobin v. Grossman,* 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419, 424 (1969)) (first alteration added; second alteration in original).

In *Di Ponzio,* for example, the parking gear of a car at a self-service gas station inexplicably failed, causing the car, with its engine running, to roll backwards and injure plaintiff. 657 N.Y.S.2d 377, 679 N.E.2d at 617. Plaintiff sued the gas station on the theory that it had a duty to enforce a regulation requiring cars to be turned off while being filled. *Id.* The New York Court of Appeals held that "this type of accident was not among the hazards that are naturally associated with leaving a car engine running during the operation of a gas pump" and affirmed dismissal of the claim. *Id.* at 620.

Likewise, in this case, the Court finds that the bizarre and malicious prank that caused Sampaio's injury was not among the foreseeable hazards naturally associated with compressed gas tanks being accessible on a worksite, as opposed to being locked away. More fundamentally, the Court recognizes that imposing liabili-

---

**3.** The relevant New York regulation was in effect at the time of Sampaio's accident but has since been repealed.

ty in such cases would effectively require welding companies and other contractors to lock and stow away all compressed gas tanks while not in use. While that practice may seem like a sensible requirement, the Court notes that neither New York state nor federal administrative agencies (whose institutional capacities in this regard far exceed the Court's) have seen fit to promulgate such a rule anywhere among very detailed workplace standards. For the Court to promulgate such a standard as a rule of law arising from this case would be tantamount to an act of legislation, a function beyond the province of this Court's authority under any circumstances, and particularly unwarranted in the context of the sparse factual record available here from which any reasonable assessment may be made of the costs and benefits entailed in mandating such a requirement to the entire construction industry.

The same point applies to Sampaio's argument that Defendants should have implemented a badge identification system, or installed video surveillance at the worksite. On this point, the Court concludes that Defendants did not owe Sampaio a legal duty to adopt more protective means to prevent the accident he suffered. This Court is equally capable of devising countless other conceivable ways by which Sampaio's unfortunate accident might have been averted. But that is not the point of this litigation, nor the office of this Court. The limited role of the Court here is to determine as a matter of law whether the accident that injured Sampaio fell within the zone of reasonable foresight, and thus one that Defendants should have taken steps to avoid. In absence of any evidence that Defendants were otherwise involved in causing Sampaio's injury, the Court must grant the summary judgment motion.

## IV. *ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that the motion of defendants JDP Mechanical, Inc., Pavarini Construction Co., Inc., Atlantic–Heydt, LLC, and Solow Building Company, L.L.C., for summary judgment is granted and the case is dismissed with prejudice.

The Clerk of Court is directed to close this case.

**SO ORDERED.**