James BAILEY, Plaintiff,

v.

SEABOARD BARGE CORPORATION, Petroleum Transport Corporation, Moran Towing Corporation, Clean Water of New York, Inc., Mariners Harbor Marine Corp., and Egret Realty Corp., Defendants.

No. 03CV0267(GBD).

United States District Court, S.D. New York.

Feb. 25, 2005.

Bernard D. Friedman, Friedman & James L.L.P., New York City, for Plaintiff.

Jethro M. Eisenstein, Profeta & Eisenstein, Profeta & Eisenstein, Patrick J. Corbett, Badiak, Will & Ruddy, L.L.P., New York City, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

DANIELS, District Judge.

Plaintiff, a tankerman, brings suit asserting claims under the Jones Act 46 U.S.C. § 688 and common law negligence against his employer and others for injuries he sustained while attempting to board his employer's ship. Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, defendants' motions are granted.

### *BACKGROUND*

Plaintiff James Bailey was a tankerman assigned to work on the barge Rhode Island.[1] His claims arise from injuries he sustained while attempting to reach the Rhode Island.[2] Upon arriving at the loca-

1. The Rhode Island is a barge owned by Petroleum Transport Corporation (PTC) and operated by Seaboard Barge Corporation (Seaboard).

2. The Rhode Island was docked at a facility

tion of the Rhode Island he saw the barge berthed offshore, moored outside of another barge, the Josiah Bartlett. A large car float was permanently attached to the shore with two ramps in front in order to allow for access to the Josiah Bartlett and from there, to the Rhode Island. Plaintiff's Rule 56.1 Statement (Seaboard) at 2, ¶ 8. Although plaintiff noticed this route to the Rhode Island, he observed work underway on the Josiah Bartlett. He testified that "they were welding and there were forklifts, they were doing a lot of work there, and I could see some of the men working on one of the other barges." Deposition of James Bailey, Declaration of Jethro M. Eisenstein, Exhibit E at 30. He believed it unsafe to board the Rhode Island via that route. Id., ¶ 10. Plaintiff testified that he "didn't want to get wrapped up in that." Id. at 33. Additionally, plaintiff was further dissuaded from following that route by signs at the entrance to the facility that read:

WARNING

DANGEROUS CARGO

NO VISITORS

NO SMOKING

NO OPEN LIGHTS.

Plaintiff's Rule 56.1 Statement (Seaboard) at 2, ¶ 10. No written directions or signs were posted advising him where to report or where to check in, or how seamen were to access their vessels. Plaintiff saw no security or other available personnel who could provide assistance.[3] Plaintiff was not an employee of defendant Clean Water, who operated and controlled the Staten Island facility, and therefore claims that he was unfamiliar with any access route to the Rhode Island. Based on the above observations, plaintiff chose to seek an alternate path and attempt to board the Rhode Island by walking along a mothballed barge.[4] "With no clear-cut route or anyone available to assist him, plaintiff chose to access the 'Rhode Island' via the mothballed vessels which he believed were located near the bow of his barge." Plaintiff's Memo at 4.

Plaintiff approached the mothballed barge, and after taking a couple of steps on the gangway, he decided that "these old barges weren't safe" and that he could not get to the Rhode Island by that route because "there was a gap between the barges." Deposition of James Bailey at 41. Plaintiff retraced his steps along the gangway, whereupon the wheeled duffel bag he was pulling caught on something, flipped and pulled him over the edge of the mothballed barge into the water between the barge and the shore. Plaintiff sustained injuries as a result of falling from the deck. After falling in the water, plaintiff swam a few feet towards the shore, he "walked towards the main building be-

located at 3245 Richmond Terrace, Staten Island, New York having its oil tanks cleaned. The facility which is located on the south shore of Newark Bay, was owned by defendant Mariners and operated and controlled by defendant Clean Water of New York, Inc. ("Clean Water"). Clean Water was in the business of cleaning and gas-freeing barges. The facility consisted of a large barge (the car float) extending North from the shore, a smaller barge (Trade 1) tied up to the north end of the car float and two barges (the Josiah Bartlett and the CW–12) tied up to the west side of the car float.

3. Immediately inside the entrance to the car float was the Clean Water Office where a Clean Water employee was present during business hours. See Defendants (Seaboard) statement of undisputed material facts pursuant to local rule 56.1 in support of their motion for summary judgment, claim 15, page 4.

4. It is undisputed that the mothballed barges were not owned, operated or controlled by any of the defendants.

cause [he] couldn't get back up onto the shore, [he] was too weak." *Id.* at 46. He was met by a couple of Clean Water workers who "took [him] through the office and then up to the Rhode Island from the floating dock," the route he originally avoided. *Id.* at 118. The original route, which Bailey took without incident, was the direct and appropriate path to the Rhode Island.

Plaintiff filed suit asserting claims under the Jones Act 46 U.S.C. § 688 against defendants Seaboard, PTC and Moran Towing and claims of common law negligence against defendants Clean Water, Mariners, and Egret Realty Corp.[5] Plaintiff alleges that Seaboard's failure to properly instruct him on how to access the barge Rhode Island contributed to his injury. He further maintains that Clean Water failed to provide a safe and clear means for plaintiff to access the Rhode Island through Clean Water's premises. Plaintiff claims that he was "rendered sick, sore, lame and disabled and sustained severe permanent personal injuries, was and is internally and externally disabled causing him to suffer pain...." Complaint, ¶¶ 7, 16, 25, 37, 47, 57. Plaintiff seeks $3,000,000 from all defendants as well as $100,000 from Seaboard, PTC and Moran for the period that he was disabled and unable to work. Complaint at 12, ¶ 58.

Defendants Clean Water and Mariners moved for summary judgment on plaintiff's common law negligence claim. Defendants Seaboard and PTC moved for summary judgment on plaintiff's Jones Act claim. For the reasons stated below, those motions are granted.

### DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ. P.56(c); *see Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317 (1993). The burden of demonstrating that no factual dispute exists is on the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Summary judgment should be granted only when no reasonable trier of fact could find in favor of the nonmoving party. *See Taggart v. Time Inc.,* 924 F.2d 43, 46 (2d Cir.1991).

### A. Common Law Negligence by Clean Water and Mariners

Under New York law, the elements of a negligence claim are: (1) a duty owed to the plaintiff by the defendant; (2) breach of that duty; and (3) injury substantially caused by that breach. *See Febesh v. Elcejay Inn Corp.,* 157 A.D.2d 102, 555 N.Y.S.2d 46 (1st Dep't 1990). It is well settled law that a landowner has a duty to exercise reasonable care under the circumstances and to provide a reasonably safe premises. *See Basso v. Miller,* 40 N.Y.2d 233, 241, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976).

---

5. Defendants Seaboard and PTC are both wholly-owned subsidiaries of defendant Moran Towing Corporation. Defendant Egret Realty Corp. has not answered plaintiff's complaint.

■ Plaintiff claims that defendants Clean Water and Mariners breached their duty of reasonable care by failing to provide a safe and clear means for plaintiff to access the barge Rhode Island through Clean Water's premises. Clean Water and Mariners were indisputably the operator and owner, respectively, of the Staten Island facility where the Rhode Island was docked. Plaintiff argues that the warning sign that stated "WARNING—DANGEROUS CARGO—NO VISITORS—NO SMOKING—NO OPEN LIGHTS," the lack of signs directing the seamen where to proceed, and the fact that there were no security guards or other official personnel available to direct him amount to a breach by Clean Water and Mariners to provide him a safe and clear means to access his barge.

■ Plaintiff, however, has not met his burden of showing that Clean Water or Mariners breached their duty of reasonable care. A dock owner's duty to seamen using the dock is defined by the application of state law, and not maritime law. *See Victory Carriers, Inc. v. Law,* 404 U.S. 202, 206–07, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971)(stating that "the gangplank has served as a rough dividing line between state and maritime regimes" with piers and docks "deemed extensions of land"). Under New York law, landowners and business proprietors have a duty to maintain their properties in reasonably safe condition. *See Di Ponzio v. Riordan,* 89 N.Y.2d 578, 583, 657 N.Y.S.2d 377, 679 N.E.2d 616 (1997). In addition, New York law imposes a duty to warn where a person could not reasonably be expected to anticipate a dangerous condition. *See Strausser v. Dow Chemical Co.,* 1998 WL 92423 at *4 (S.D.N.Y. Mar. 3, 1998). Plaintiff did not present any evidence that Clean Water and Mariner's facility was inherently unsafe or that defendants failed to warn of hidden dangers known to them and not reasonably apparent to the plain-

tiff. Plaintiff testified that he "was originally going to go through a building there, but they were welding and there were forklifts, they were doing a lot of work there, and I could see some men working on one of the other barges, so I walked down to the—I decided I would approach it another way and walked down this walkway...." Deposition of James Bailey, Declaration of Jethro M. Eisenstein, Exhibit E at 30. He offers no proof that the area owned by Clean Water and Mariners which would have led him to the Rhode Island was unsafe or that he was prevented from following that path. The evidence shows that activity at the facility was commensurate with the type of work that occurred there, and with which plaintiff was familiar.

Plaintiff, furthermore, cannot claim that defendants Clear Water and Mariners breached that duty by failing to provide him with a safe passage to the Rhode Island through the mothballed barge. It is undisputed that plaintiff's injuries occurred on the mothballed barges adjacent to the property and not on Clean Water's or Mariners' property. Indeed, plaintiff did not enter Clean Water and Mariner's facility until after he sustained his injuries. He chose, by his own volition, to take a different path through the mothballed barges. Clean Water and Mariners disclaim any ownership of the property from which plaintiff fell and plaintiff has not alleged and cannot prove that such property was owned by either Clean Water or Mariners. Plaintiff, therefore, has not provided any evidence that Clean Water or Mariners breached their duty of care as a landowner to provide a safe and clear means for plaintiff to access the premises and the barge Rhode Island.

Lastly, the evidence shows that plaintiff's decision to follow the path along the mothballed barges was entirely his own.

"With no clear cut route or anyone to assist him, plaintiff chose to access the 'Rhode Island' via the mothballed vessels which he believe were located near the bow of his barge." Plaintiff's Brief at 4. There is no evidence that plaintiff was directed to take that route or that any actions by defendant Clear Water or Mariners induced plaintiff take that route. Indeed, after initially making the decision to follow that path, plaintiff recognized that his chosen path was untenable and unsafe. Plaintiff realized that the gangway was "old and dilapidated," "rusted," "in worse shape" than a working gangway, and appeared to be "abandoned" and "out of service." He then retraced his steps, whereupon his bag got caught and he fell into the water. Defendants Clean Water & Mariners Memorandum of Law in Support of Summary Judgment Motion at 9. Plaintiff, therefore, has failed to establish that any breach of the duty of reasonable care by defendants was the proximate cause of his injuries. *See County of Westchester v. Town of Greenwich, Conn.,* 870 F.Supp. 496 (S.D.N.Y.1994)(proximate causation is present when the acts or omissions at issue were a substantial factor in producing the plaintiff's injury: the substantial factor test reflects the inquiry fundamental to all proximate cause questions, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence). Plaintiff's claims against defendant Clean Water and Mariners are therefore dismissed.

B. *Jones Act Negligence by Seaboard or PTC*

■ Under the Jones Act, 46 U.S.C. § 688, shipowners have a duty to use reasonable care to ensure that their employees have a safe place to work. *See Diebold v. Moore McCormack Bulk Transport Lines, Inc.,* 805 F.2d 55, 58 (2d Cir.1986); *see also Wuestewald v. Foss Maritime*

*Company,* 319 F.Supp.2d 1002, 1007 (N.D.Ca.2004). The standard of safety and reasonable fitness is necessarily flexible and must depend on the particular facts of the case. In the Second Circuit, the plaintiff must prove by a preponderance of the evidence: "(1) that a dangerous condition actually existed; (2) that the defendant shipowner had notice of the dangerous condition and should have reasonably anticipated the plaintiff might be injured by it; and (3) that if the shipowner was negligent, such negligence proximately caused the plaintiff's injuries." *Diebold,* 805 F.2d at 58; *see also Rice v. Atlantic Gulf & Pacific Co.,* 484 F.2d 1318, 1320 (2d Cir.1973).

■ Plaintiff claims that defendants Seaboard and PTC breached their duty "to provide its seamen with a safe and available means of ingress to its vessel and that this duty extends beyond the vessel's gangway to premises over or through which a seaman must traverse directly to access his vehicle." Plaintiff's Brief at 5. Plaintiff, however, has not offered any proof to show that defendants Seaboard and PTC failed to provide a safe and available way to get from the shore to the barge. The evidence shows that such a safe route through the car float was available to plaintiff. Indeed, plaintiff acknowledged that he recognized the path, but because of the work going on, he "didn't want to get wrapped up in that." Deposition of James Bailey, Defendant Seaboard's Facts, Exhibit E at 33. Plaintiff's injury was not caused by the condition of the route he at first avoided. It is also undisputed that after plaintiff's accident, he returned to the front of the facility and safely followed this path to reach his barge. Plaintiff, therefore, has failed to show that defendants Seaboard and PTC

breached a duty to provide a reasonably safe work environment.

▮ Moreover, plaintiff was not injured by a reasonably anticipated dangerous condition. Plaintiff was injured as a result of his decision to board the Rhode Island through the mothballed barge. It is undisputed that defendants Seaboard and PTC did not own, operate or control those barges. Clearly, therefore, defendants had no duty to reasonably anticipate that the plaintiff would be injured on the mothballed barge. Employers are "not under an absolute duty to provide the plaintiff with a safe means of going ashore and returning to his ship beyond the ship's gangplank." *Wheeler v. West India S.S. Co.*, 103 F.Supp. 631 (S.D.N.Y.1951). In *Thurnau v. Alcoa Steamship Company*, 229 F.2d 73, 74 (2d Cir.1956), the Second Circuit held that a shipowner was under no duty to provide the crew with safe means of transportation from and to the vessel while on shore leave. Moreover, defendants have no duty to warn plaintiff of dangers beyond the gangway in areas not under the shipowners' control. *See Robinson v. Northeastern Steamship Corp.*, 228 F.2d 679, 680 n. 1 (2d Cir.1956).

Defendants' motions for summary judgment are granted and plaintiff's claims against defendants Seaboard, PTC, Clean Water and Mariners are dismissed.

SO ORDERED.