■ WESLEY ANTHONY LEVIN, Appellant, v STATE OF NEW YORK, Respondent. [820 NYS2d 626]—

In a claim to recover damages for personal injuries, the claimant appeals from a judgment of the Court of Claims (Nadel, J.), dated January 14, 2004, which, after a nonjury trial on the issue of liability, and upon a decision of the same court dated December 18, 2003, dismissed the claim.

Ordered that the judgment is affirmed, without costs or disbursements.

On March 11, 2000 the claimant, then an inmate at Arthur Kill Correctional Facility (hereinafter Arthur Kill), fell from an upper bunk and fractured his finger. In accordance with the policy of the Department of Correctional Services, Division of Health Services, Dr. Francois Thebaud, an attending physician at Arthur Kill, issued a medical order directing that the claimant be transferred to a lower bunk for observation. However, the order was not immediately implemented and on March 14, 2000 the claimant again fell out of his upper bunk and sustained serious injuries.

The claimant filed a claim against the State of New York alleging that it was negligent in failing to transfer him immediately to a lower bunk after his first fall. At trial, the claimant testified that, as he woke up on the morning of March 11, 2000, he felt "kind of disoriented" and thus fell from his upper bunk. He further asserted that, shortly after his first fall, he reported to medical staff that the fall was caused by a seizure, and that he thus believed that the medical order directing his

placement in a lower bunk was intended to prevent a second fall that might be caused by a subsequent seizure. The claimant testified that his second fall was also caused by a seizure.

Dr. Thebaud, on the other hand, testified that the claimant reported that his first accident was the result of dizziness, and that the claimant only "thought" that he was having a seizure at the time. According to Dr. Thebaud, the claimant's medical records were devoid of both a history of seizure disorders or treatment for such disorders, and the maintenance medication taken by the claimant was not necessarily indicative of the existence of a seizure disorder. The doctor testified that his medical order directing Arthur Kill staff to assign the claimant to a lower bunk was premised solely on the difficulty the claimant would have in climbing to the upper bunk as a consequence of his fractured finger, and that it was not necessary that the transfer to a lower bunk be made immediately.

The Court of Claims found in favor of the defendant and dismissed the claim. We affirm.

In a case tried without a jury, this Court's inquiry "is as broad as that of the trial court," and this Court may render a judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses (*Martinez v State of New York*, 225 AD2d 877, 878-879 [1996]; *see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *Matter of Allstate Ins. Co. v Albino*, 16 AD3d 682, 683 [2005]; *Greenhill v Stillwell*, 306 AD2d 434 [2003]). Here, the evidence supports the determination reached by the Court of Claims.

The State owes a duty to provide for the health and care of inmates (*see Mullally v State of New York*, 289 AD2d 308 [2001]; *Kagan v State of New York*, 221 AD2d 7, 17 [1996]). Nonetheless, "the scope of the State's duty to protect inmates is limited to risks of harm that are reasonably foreseeable" (*Sanchez v State of New York*, 99 NY2d 247, 253 [2002]; *see Silvera v State of New York*, 306 AD2d 269 [2003]). Moreover, "[a]lthough the precise manner in which the harm occurred need not be foreseeable, liability does not attach unless the harm is within the class of reasonably foreseeable hazards that the duty exists to prevent" (*Sanchez v State of New York, supra* at 252; *see generally Di Ponzio v Riordan*, 89 NY2d 578, 583 [1997]).

Although Arthur Kill had an explicit policy to assign lower bunks to inmates suffering from seizures, the Court of Claims determined, on the basis of its assessment of the credibility of the witnesses, that the claimant did not persuasively demonstrate before the second accident that a seizure had caused his

first accident, that he generally suffered from seizure disorders, or that he needed to be placed in a lower bunk immediately in order to minimize the danger of future seizures. The Court of Claims thus properly determined that it was not reasonably foreseeable that the claimant would again fall out of an upper bunk so soon after his first accident, or that he would fall as a consequence of a seizure.

Contrary to the argument of our dissenting colleague, the question of whether the physicians employed by the defendant properly examined or diagnosed the claimant is not raised in this action. Rather, the only issue here is whether the non-medical employees at the defendant's correctional facility were negligent in failing immediately to implement a physician's order to transfer the claimant to a lower bunk. On the evidence presented, the Court of Claims correctly determined that the failure of Arthur Kill to immediately transfer the claimant to a lower bunk did not constitute a breach of any duty it owed to him (*see Kaminsky v State of New York*, 265 AD2d 306, 306-307 [1999]; *Marchione v State of New York*, 194 AD2d 851, 854 [1993]; *Spadaro v State of New York*, 38 Misc 2d 489, 490-491 [1963], *affd* 28 AD2d 604 [1967]; *cf. Kagan v State of New York, supra* at 17-18; *Hight v State of New York*, 35 Misc 2d 926 [1962]). Miller, J.P., Spolzino and Dillon, JJ., concur.

Goldstein, J. (dissenting and voting to reverse the judgment, on the law and the facts, to award the claimant judgment on the issue of liability, and to remit the matter to the Court of Claims for a trial on the issue of damages): On March 11, 2000 the claimant, then an inmate at Arthur Kill Correctional Facility (hereinafter Arthur Kill), fell from an upper bunk and fractured his fifth finger. He reported to members of the staff at Arthur Kill that "I thought I was having a seizure." At the time of his fall, the claimant was receiving neurontin which can be used as a medicine for seizure disorders. Dr. Francois Thebaud, an attending physician at Arthur Kill, recorded in the claimant's medical records that the claimant reported he had a seizure.

At trial, Dr. Thebaud testified that he issued the order for a lower bunk for the claimant. He testified that his order was based upon the claimant's fractured fifth finger since the sole evidence of a seizure was the claimant's "subjective" complaint of a seizure, and the only way to objectively ascertain whether a patient has suffered a seizure is to witness the seizure or to administer an EEG or CAT scan on the patient—which was not done in this case.

Dr. Thebaud further testified that if in his opinion the claimant required an immediate transfer to a lower bunk, he

would have said so in the order and called "Movement and Control" before a written order was prepared, but did not do so in this case since the need for a lower bunk was not "urgent."

The defendant's medical records for the claimant dated March 13, 2000 stated that the claimant injured his fifth finger "after a seizure" and his assignment to a lower bunk bed was part of the plan for treating his condition. The records failed to distinguish between subjective complaints and objective findings. The claimant's injury to his fifth finger was listed under "subjective" complaints.

The documentary evidence establishes that the order directing that the claimant "requires lower bunk accommodations" was from Dr. J. Mitchell, not Dr. Thebaud. Dr. Thebaud's testimony that he issued the order was in my view unworthy of belief. His testimony as to the reasons why he would have issued such an order was irrelevant, since he did not in fact issue the order.

At the trial, deposition testimony of Dr. Mitchell, who signed the order, was read into evidence. She noted in her testimony that a seizure could be caused by something other than a seizure disorder. If an inmate had a seizure without a documented history of prior seizures, that would not be considered a seizure disorder but would still require assignment to a lower bunk. It is clear from the record that it is the policy of Arthur Kill to place inmates with seizures in lower bunks.

Dr. Mitchell's order was dated March 13, 2000 and stated that the "inmate requires lower bunk accommodations." That order was not implemented. Dr. Mitchell testified that she knew of no reason why her order was not implemented. The order did not state the reason why it was issued, and there was no language in the order indicating that its implementation could be delayed. There is no evidence that Arthur Kill employees charged with the ministerial duty of implementing the order were given any information as to why the order was issued and/or any discretion to delay its implementation.

On March 14, 2000 the claimant again fell out of his upper bunk and sustained serious injuries. Again, the claimant reported that the fall was caused by a seizure. This time, the claimant stayed in the infirmary overnight and dilantin was prescribed for seizures.

The claimant filed a claim against the State of New York alleging negligence in failing to transfer him to a lower bunk after his fall on March 11, 2000. After a nonjury trial, the claim was dismissed on the ground that the claimant "failed to meet his burden of establishing by a fair preponderance of the cred-

ible evidence that the likelihood of his suffering a seizure was reasonably foreseeable" at the time of the accident on March 14, 2000.

Where, as here, a case is tried without a jury, "this Court's power to review the evidence is as broad as that of the trial court" (*Bubba's Bagels of Wesley Hills, Inc. v Bergstol*, 18 AD3d 411, 412 [2005]). This Court may render a judgment it finds warranted by the facts, taking into account in a close case the fact that the trial judge had the advantage of seeing the witnesses (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]; *Matter of Allstate Ins. Co. v Albino*, 16 AD3d 682, 683 [2005]; *Greenhill v Stillwell*, 306 AD2d 434 [2003]).

It is apparent from the claimant's medical records that it was reasonably foreseeable that the claimant would suffer a seizure. Further, it is clear from the record that allowing the claimant to remain in an upper bunk violated the defendant's own practice and procedures and the directives of its own medical personnel.

"[T]he scope of the State's duty to protect inmates is limited to risks of harm that are reasonably foreseeable" (*Sanchez v State of New York*, 99 NY2d 247, 253 [2002]; *see Basso v Miller*, 40 NY2d 233, 241 [1976]). Moreover, "[a]lthough the precise manner in which the harm occurred need not be foreseeable, liability does not attach unless the harm is within the class of reasonably foreseeable hazards that the duty exists to prevent" (*Sanchez v State of New York, supra* at 252; *see Di Ponzio v Riordan*, 89 NY2d 578, 583 [1997]). The existence of the policy to assign lower bunks to inmates suffering from seizures is proof that the defendant actually foresaw the risk that an accident would occur in the manner in which it occurred.

Since it is clear from the record that the defendant violated its own practices and procedures enacted to avoid the foreseeable event that the claimant would fall again, the determination in favor of the defendant is not supported by the evidence.